## ALFRED BRIGGS *v.* JOHN McCULLOUGH AND ROBERT DINSMORE *et als.*

INSURANCE POLICY EXEMPT FROM EXECUTION.—The party claiming that a life insurance policy, under the statute of this State, is exempt from execution, must show that the policy was issued by a company incorporated under the laws of this State, and that the benefits which he expects to derive from the policy are such as might have been secured by the payment of an annual premium not exceeding five hundred dollars.

ENDOWMENT POLICY EXEMPT FROM EXECUTION.—An endowment policy, in which a life insurance company, in consideration of a sum of money deposited with it, agrees to pay the depositor, or his assigns, at the end of ten years, (or sooner, if he desires,) a sum of money, together with such dividends as his deposit shall earn, is an insurance on the life, in the sense of the statute exempting life insurance policies from execution.

PROOF OF INCORPORATION.—Proof of the company name raises no presumption that it is an incorporated company; nor if the word " California" occurs in the name, does it raise a presumption that it was incorporated under the laws of this State.

APPEAL FROM ORDER ADJUDGING A CONTEMPT OF COURT.—The question whether an appeal lies from an order made of the final judgment adjudging a judgment debtor guilty of a contempt for not applying his property on the execution, not decided.

Appeal from the District Court, Sixth Judicial District, Sacramento County.

The respondent moved to dismiss the appeal, because the judgment adjuging the appellant guilty of a contempt was not subject to review on appeal. The Court do not pass on this motion.

The other facts are stated in the opinion of the Court.

*Ramage & Smith*, for Appellant.

The first question is, whether the order adjudging McCullough guilty of contempt, and ordering his imprisonment, is final and conclusive. To render such an order final, the Court must have jurisdiction to make it.

In *Ex Parte Summers*, 5 Iredell, 149, the Court held: "That the facts on which the commitment is based need not be stated in the order; but if stated, and are insufficient, that is, such as manifestly are not a contempt, it seems perfectly agreed it must be disregarded, and the party discharged from an unlawful imprisonment."

In this case the question seems to have been examined with care and ability, and the distinction drawn between orders that are final and those that are not.

The four hundred and eightieth section of our Practice Act specifies five acts or omissions which are deemed contempts, an order of commitment under some of which might be deemed final; but under the third subdivision the writ or order to which obedience is required must be lawful. Under the provisions of said section these proceedings were conducted, and the facts on which the order of commitment is based are therein recited.

This question is not new in this Court. It came up in *Ex Parte Rowe*, 7 Cal. 175, and again in *Ware v. Robinson*, 9 Cal. 111, where the Court say: "The learned counsel of the plaintiff asks this Court to dismiss the appeal, upon the ground that this was a case of contempt, from the decision of which no appeal will lie. This objection does not seem

to be well taken. This question was very fully considered in the several cases of *E. A. Rowe on Habeas Corpus*, January Term, 1857." The facts in the above cases were similar to those in the one at bar. The proceedings were supplemental to execution, and the defendant refused to answer questions; the referee reported the facts to the Court, who ordered him committed for contempt. In that case, like this, the facts were set forth in the record. If in that case the order of commitment was appealable, a like order is equally so in this.

The three hundred and thirty-sixth section of the Practice Act provides that an appeal may be taken from any special order made after final judgment, as well from the order committing for contempt as from the order of the referee and the order of the Court of July 14th, 1868. Is the order of the referee to be treated as an order in the cause after final judgment? All orders made in a cause in the District Court, whether made by said Court or the Judge thereof, a County Judge, or a referee, have the same effect as if made by the Court. (*Borland* v. *Thornton*, 12 Cal. 440.) The Act giving the Judge power to appoint a referee was not intended to enable him to shift a responsibility, or to deprive a party of a right, but to facilitate the transaction of business. If an order of the referee is not to be treated as the order of the Court, it is difficult to see how a party can be punished for contempt for disobedience thereto. The Court adopts such orders, if lawful, and acts upon them as if made in Court or by the Judge.

*George Cadwalader*, for Respondent.

The appeal being in a proceeding for contempt, cannot be entertained. 1st. The referee had the right to make the order requiring McCullough to deliver up his endowment policy under the two hundred and forty-third section of the Practice Act. 2d. The refusal of McCullough to obey the

order of the referee was a contempt, and he was liable to punishment therefor. (Prac. Act, Sec. 245.)

Section four hundred and eighty-nine provides that "when the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he shall have performed it;" and section four hundred and ninety-three provides that "the judgment and orders of the Court or Judge, made in cases of contempt, shall be final and conclusive." The general law on the subject of contempts shows that judgments therein are not subject to review on the ground of judicial comity, of which the four hundred and ninety-third section is merely declaratory. The following seclected cases out of a hundred illustrate this: 27 Vermont, 56; 27 Georgia, 476; 2 Iowa, 69; 1 Hill, 165; 4 Johns. 369. The appeal in such cases will be dismissed. (*Dunham* v. *Iowa,* 6 Clarke, Iowa, 252.) In *Ware* v. *Robinson,* 9 Cal. 11, it was assumed that a contempt order was appealable. The decision was rendered on this assumption, without investigating the question.

A statute like that exempting this policy from execution must be construed strictly. "Let a statute be ever so charitable," says Mr. Chief Justice Holt, 12 Mod. 513, "if it gives away the property of the subject, it ought to be construed strictly." In *Buckingham* v. *Billings,* 13 Mass. 80, where an exemption statute was under examination, the Court said: "This statute, as it is in derogation of the common rights of creditors to secure their debts out of the property of their debtors, ought to have a strict construction, according to the true intent and meaning of the Legislature, if that can be ascertained." In *Danforth* v. *Woodward,* 10 Pick. 423, the same doctrine was affirmed.

The party claiming the exemption must show that his case is within the statute. This is illustrated by the case of *Calhoun* v. *Knight,* 10 Cal. 394, where the Court refused to sustain the claim of exemption because, to use the language of the opinion, "it is not shown that the plaintiff is one of

the persons mentioned in the statute, or that he habitually earned his living by the use of the animals in question." Looking at our statute we see what is exempt from execution, and what is it but life insurance on the life of the debtor, obtained from an insurance company incorporated under the laws of this State, and not costing more than five hundred dollars per annum? Hence, for the appellant to sustain his exemption, he must show that he purchased insurance on his own life from an insurance company incorporated under the laws of this State, and that in doing so he did not take from his assets more than five hundred dollars per annum.

It does not appear that McCullough purchased simple life insurance, or that it only cost five hundred dollars per annum, or that he purchased it of an insurance company incorporated under the laws of this State. As life insurance on the life of the debtor is the primary condition of the exemption contemplated by the statute, it becomes necessary to ascertain what "life insurance" is. The definition furnished by the counsel for appellant is simply of "insurance," and not "life insurance," and it will be noted that of the various kinds of insurance—marine, fire, health, and life—each have particular definitions, and to ascertain what the Legislature meant by "life insurance," according to an accepted rule, we take its accepted and legal definition. In Bouvier's Law Dictionary it is described as "an assurance of a life upon the payment of a premium. This may be for the whole life, or for a limited time. On the death of the person whose life has been insured, during the time for which it is insured, the insurer is bound to pay to the insured the money agreed on." Thus the contract of life insurance was a contract for a certain sum of money, only payable after the death of the insured, and implying that the heirs or assigns of the insured were to enjoy the fruits of the insurance. These were its features, distinguishing it from the other species of insurance, and giving it its cast and character. All other kinds of insurance must *ex necessitate* have some of the attributes of life insurance, and yet such peculiarities as enable them to

be known and recognized by their proper names. This train of thought suggests itself for the reason that in McCullough's endowment policy there is a clause making the thirty-five hundred dollars payable before the lapse of ten years "should McCullough die," upon which appellant's counsel presents an argument that it is simply life insurance on the life of the debtor, within the meaning of the Exemption Act. We must respect the main object of the endowment policy and its most certain and beneficial end. We say that its leading feature is to endow McCullough, on July 6th, 1878, with the sum of three thousand five hundred dollars in gold coin, should he live that long, together with such money in the way of dividends as the insurance company should declare McCullough from time to time entitled to. The deposit of two thousand nine hundred and thirty-three dollars was simply loaned to the company at interest, the interest being the difference between two thousand nine hundred and thirty-three dollars and three thousand five hundred dollars and such dividends as should be assigned to McCullough.

*Ramage & Smith,* in Reply.

If the Legislature had the authority to pass the Act to exempt policies of life insurance from execution, (which power the respondent does not question,) and if the policy comes within its provisions, the funds thus invested and the policy are as much exempt from execution as if invested in necessary provisions for immediate family use.

So far as the merits of this case are concerned, it matters but little whether the Act under which this policy is claimed as exempt from execution is to receive a strict or liberal construction, although the Courts of New York hold that statutes exempting property from taxation should be liberally construed. (*Carpenter* v. *Herrington,* 25 Wend. 370; *Ford* v. *Johnson,* 34 Barb. 364.) In the last case the Court say: "And it is undoubtedly the duty of the Court, since these

Acts concern the public good, to give them an enlarged and liberal construction."

If the paper called the endowment policy of life insurance is a life insurance, and the money, benefit, right, privilege, or immunity accruing therefrom or growing out thereof, have or might have been secured by the payment of a sum not exceeding five hundred dollars a year, then it comes within the provisions of the Act.

Angell, in his work on fire and life insurance, section two hundred and seventy-four, says that life insurance is a contract of indemnity, and defines it to be "a contract by which the underwriter, for a certain sum, proportioned to the age, health, profession, and other circumstances of the person whose life is the object of the insurance, engages that that person shall not die within the time limited in the policy, or if he do, that he will pay a sum of money to him in whose favor the policy was granted."

The above is given as the definition of an ordinary policy of insurance, and in section two hundred and eighty-four the same author gives the form of such a policy. As the wants and conveniences of society have required, other forms and modes of insurance have been adopted, among which is the endowment plan, upon which issues an endowment policy of life insurance, as will be seen by reference to the appendix to the same work.

We refer the Court to these to show the custom and course of proceeding, and the different kinds of contracts that are called policies of life insurance. We conclude from the foregoing that the form adopted in this case is one of the modes practiced by life insurance companies, and that the advantages to be derived from this policy come within the provisions of the Act.

By the Court, CROCKETT, J.:

Briggs obtained a money judgment against McCullough and others, on which an execution was duly issued. After proper proceedings in that behalf, McCullough was ordered to appear before a referee, appointed by the Court for that purpose, to be examined touching his property. In the course of his examination before the referee he admitted that he had deposited with the Pacific Mutual Life Insurance Company of California the sum of two thousand nine hundred and thirty-three dollars in gold coin, and took from said company an agreement, called an "endowment policy," whereby the company agreed to pay him or his assigns, on the 6th day of July, 1878, (or sooner if he should die,) the sum of three thousand five hundred dollars in United States gold coin, together with such dividends as his deposit should earn. He also admitted that said policy was in his possession and was his property; and thereupon the referee made an order that McCullough deliver the policy to the Sheriff, as property to be applied on the judgment of Briggs. McCullough refused to obey the order, which fact was reported by the referee to the Court which rendered the judgment; and thereupon the Court cited McCullough to show cause why he should not be punished for a contempt, and on the rule to show cause, (in obedience to which McCullough had appeared,) the Court, after hearing the matter, found the facts to be as already stated, and adjudged McCullough to be guilty of a contempt, and entered an order that he be imprisoned, without bail, until he obeyed and complied with the order of the referee. From this order McCullough has appealed.

At the hearing, a motion was made to dismiss the appeal; but without expressing any opinion on this point, we deem it best to dispose of the case on its merits. The counsel for McCullough claim that the policy of insurance in question is exempt from execution, under an Act of the Legislature of March 28th, 1868, (Stats. 1868, p. 500,) which provides

that "no money, benefit, right, privilege, or immunity accruing, or in any manner whatever growing out of any life insurance on the life of the debtor, made in any insurance company incorporated under the laws of this State, shall be subject to levy under attachment, execution, or under any original mesne or final process whatever against such debtor, or to be taken, sequestered, or reached by any proceeding supplementary to execution, or other like proceeding, provided, however, this exemption shall not extend beyond such moneys, benefits, rights, privileges, and immunities as have been or might have been secured by the payment of an annual premium, not exceeding five hundred dollars."

In order to secure the benefit of this provision, it must appear:

First—That the insurance was made by an insurance company "incorporated under the laws of this State." This fact does not appear in this case. The company which issued the policy is designated in the proceedings as the "Pacific Mutual Life Insurance Company of California;" but for aught that appears, this may be only the name of a private joint stock association, or, at most, of a foreign corporation doing business in this State. The mere name under which it does business raises no presumption whatever that it is an incorporated company; and certainly none that it was "incorporated under the laws of this State;" nor is there any other proof of the fact in the case.

Second—It must appear that it is an "insurance on the life of the debtor," and it is urged that the policy in this case is not an insurance on the life of McCullough in the sense of the statute, but is simply a covenant by the company, that in consideration of a certain sum deposited by McCullough, the company will pay him at the expiration of ten years, or sooner, if he dies, a certain other stipulated sum, together with such dividends as his deposit shall, in the meantime, have earned. The term "life insurance" is not alone applicable to an insurance for the full term of one's life. On the contrary, it may be for a term of years, or until the assured

shall arrive at a certain age. It is simply an undertaking on the part of the insurer that either at the death of the assured, whenever that event may occur, or on his death, if it shall happen within a specified term, or before attaining a certain age, as the case may be, there shall be paid a stipulated sum. In either form it is, strictly speaking, an insurance on the life of the party. In this case the policy was to become payable on the death of McCullough, provided he died within ten years, and it is to that extent certainly an insurance on his life. It is an undertaking to pay the stipulated sum if he shall die within a specified term, which is of the very essence of life insurance. The fact that the company is to pay the agreed sum at the expiration of ten years, even though McCullough shall not have died in the meantime, does not divest it of its character of life insurance. It is only a new and additional element in the contract not inconsistent with its other, which is its chief constituent part, to wit: the undertaking to pay on the death of the assured within the specified term. We think, therefore, that this was an insurance on the life of McCullough.

Third—It must appear that the policy is not of the excepted class mentioned in the proviso to the statute, and the party claiming the exemption must show affimatively that his case is within the provisions of the statute. To do this, it was incumbent on McCullough to establish that the benefits which he is to derive from the policy are such as might have been secured by the payment of an annual premium not exceeding five hundred dollars.

No effort was made to do this, and there is nothing in the case from which we can infer the fact. In the absence of all proof, we cannot presume that this or any other insurance company would have issued this or any other policy, securing to McCullough the same "moneys, benefits, rights, privileges, and immunities" which this policy secures, by the payment of an annual premium of five hundred dollars. Having failed to establish a case which entitles him to the

exemption provided by the statute, we find no error in the record.

Judgment affirmed.


Mr. Justice SANDERSON concurring specially:

I concur in the judgment upon the first and third grounds considered by Mr. Justice CROCKETT.