[Civ. No. 8080. Second Appellate District, Division Two.—February 26, 1934.]

CARL W. WANTZ, Respondent, v. UNION BANK & TRUST COMPANY OF LOS ANGELES (a Corporation) et al., Appellants.

Andrews & Gillham, John C. Gillham, Walter M. Campbell and Loeb, Walker & Loeb for Appellants.

Robert L. Hubbard and Mart Coles for Respondent.

ARCHBALD, J., *pro tem.*—Appeal by defendants from a judgment against them based on the verdict of a jury awarding $21,269.21 as damages for alleged fraudulent representations in the purchase and sale of lands and as inducement to plaintiff's entering into contracts for the improvement of the lands so agreed to be purchased.

It appears without question that the defendant Union Bank & Trust Company held the legal title to the lands in question for the benefit of the owner, Los Angeles County Farm Land Company, and J. M. Barteaux, who was purchasing them under an agreement to improve and sell the same, and that at the time plaintiff made his first purchase of land the improvement and development of the tract was being done by the Calivalli Development Company.

On April 17, April 19, May 24 and May 31 in 1928, plaintiff entered into four separate agreements with the defendant Union Bank & Trust Company of Los Angeles for the purchase of four parcels of land aggregating 100 acres, and on the same dates also entered into four separate agreements, called "Development Contracts", with said Calivalli Development Company for the development of such tracts "in conjunction with a general planting scheme on said Calivalli Farms", by developing water for said tracts at the expense of said development company, clearing the lands of brush and vegetation and planting same "to first-class fig stock, approximately 126 to the lot", or in lieu thereof to plant in its nursery "sufficient first-class fig stock to insure said number of first-class fig trees to the lot", in which event said development company was to transplant to said lands said number of first-class uniform fig trees as soon as the same were properly rooted; and

said company agreed to cultivate, prune, irrigate and care for said trees for three years, the actual cost of such clearing, planting and cultivating and irrigation, as well as harvesting, to be paid for by plaintiff, plus ten per cent. Any crops harvested on said lands were likewise to be marketed by said company, plaintiff to receive the proceeds thereof less twenty-five per cent of the net profits realized. Three of such development contracts were signed "Calivalli Development Company, by J. M. Barteaux", and to the fourth the name of the company was signed "By John E. Elliott". To none of the four was a corporate seal affixed, and the official designation of the party signing them for the company nowhere appears. Each of the contracts, however, contains language only applicable to a corporation, so far as their reference to the second party, Calivalli Development Company, is concerned. For instance, the grant by plaintiff as party of the first part of an eight-year right to all water in or under the property described, to a right of way for laying pipe lines and to enter for the purpose of drilling wells and laying pipe lines, is to the "party of the second part, *its successors or assigns*", in each instance. The bills rendered plaintiff for his *pro rata* of the cost of such work done on the parcels purchased by him are from the "Calivalli Development Company, Inc.", and such corporation is named as payee in the checks drawn by plaintiff to pay the same. It also appears, without any contradiction that we have found, that plaintiff attended a stockholders' meeting of such corporation in May, 1928. The development contracts above referred to recite that the "Calivalli Development Company, party of the second part, . . . is engaged in the development and improvement of Calivalli Farms, consisting of that certain land described in Trust No. 533, in the Union Bank & Trust Company of Los Angeles".

The fifth cause of action set out in the complaint sought the recovery of $616 and $990, paid on June 15, 1928, and July 10, 1928, respectively, to apply on development work done under said contracts on the four parcels agreed to be purchased. These sums were paid by plaintiff's checks, made payable to "Calivalli Development Company, Inc." There is no allegation in the complaint that the respective contracts have been rescinded or that the land is worthless.

A demurrer was sustained to the original complaint and permission to amend given. One of the false representations alleged to have been made is that the land sold "was of the value of $400.00 per acre". The allegation as to the falsity of such representation was originally that the defendants "well knew that said land was not of the value of $400.00 per acre or of any value whatever *greater than $30.00 per acre*". The amendment made of such complaint, by stipulation and after demurrer sustained, was accomplished by striking out the words above italicized and inserting instead, "for the purposes for which said lands were sold to plaintiff by defendants". The complaint sought the recovery of the money paid by plaintiff on both the purchase and development contracts.

█ Appellants urge that the evidence is insufficient to support the verdict and judgment.

Plaintiff testified that just before the first purchase contract was signed he had a conversation with D. M. Cameron, a trust officer of defendant trust company; that Mr. Cameron was very busy at the time and that defendant Barteaux, who accompanied plaintiff, apparently for the purpose of having such contract executed, remained outside the railing which surrounded Cameron's desk; that plaintiff went inside and asked Mr. Cameron about Barteaux, and that "he told me Mr. Barteaux was a rich man" and "understood farming", and "had his confidence". Asked as to what else Mr. Cameron said, plaintiff replied: "I told Mr. Cameron, 'You understand, I am not buying acres, but development.' He answered and said that the development goes with the acres." Appellants urge that this is all the evidence in the case as to statements made by anyone connected with the defendant trust company. Respondent, without calling our attention to any other evidence, answers such challenge by saying merely, in substance, that he cannot be compelled to set out evidence at great length to prove there is ample to support the verdict. █ In our opinion it is the duty of a respondent whose judgment is being questioned on appeal on this ground to point out to the appellate court the evidence he deems sufficient to support such judgment, particularly where, as here, the claim is made that all of such evidence connecting a particular appellant is set out in appellant's brief, or else admit the

truth of the statement, if none can be found. We have taken the time, without such help, to search the voluminous record before us, and are compelled to say that we find appellants' claim to be sound. Neither are any of the statements made by anyone connected with the defendant trust company set out as the alleged false representations made by defendants inducing plaintiff to enter into the agreements mentioned; nor do we find any evidence to show that Mr. Barteaux was not a rich man who understood farming, and who, at least at that time, did not have the confidence of Mr. Cameron. It appears, moreover, that plaintiff had then seen the property several times and apparently had verbally agreed to buy a parcel, and that he was in the office of the company with Mr. Barteaux for the purpose of making his down payment and executing the written purchase agreement. Just what plaintiff meant by the statement he made to Cameron, that "he was not buying acres, but development", or understood by the reply which he testified Cameron made thereto, to the effect that "the development goes with the acres", we cannot conceive, as it is not alleged as a fraudulent representation and could not very well be so alleged, as each sale contract expressly provides that it "covers the sale of unimproved and undeveloped land", and each contract executed concurrently with each purchase, between plaintiff and the Calivalli Development Company, provides that while the work is to be done by the development company, the actual cost thereof is to be paid by plaintiff, plus ten per cent, and the fifth cause of action is for the recovery of money so paid on such development contracts.

The complaint alleges that in furtherance of a conspiracy to cheat, wrong and defraud plaintiff, the defendants agreed "among themselves to and did cause defendants J. M. Barteaux and John E. Elliott to assume and pretend to do business" in developing said lands "under the spurious name of Calivalli Development Company", and entered into agreements with plaintiff for such development "under the pretense and claim that said Calivalli Development Company was [a] corporation; that said so called 'Calivalli Development Company' was not a copartnership doing business under a fictitious name, nor was it a corporation or other or any form of organized or associated per-

sons'', but that the name was used by defendants Barteaux and Elliott ''individually and independent of each other'' in the sale of said lands as the representatives of defendant trust company, ''the true owner of said lands and the real party in interest'' in the transactions with plaintiff. Our attention has not been called to any evidence supporting such allegation, particularly as to the name Calivalli Development Company being used by Barteaux and Elliott in the sale of said lands as representatives of defendant trust company, ''the true owner of said lands *and the real party in interest*'' in the transactions with plaintiff, nor have we found any that does. ▮ The evidence shows without conflict that the defendant bank was not the real party in interest, as we have said, but only held the title to said lands in trust for the benefit of the real parties concerned, viz., the Los Angeles County Farm Land Company and defendant Barteaux, and that it had no other interest therein; and the only evidence we have found in the record concerning the status of such Calivalli Development Company supports the conclusion that it was a corporation at the time plaintiff became interested in the tract and was engaged in the development of the tract and not in its sale. Under the undisputed evidence it would seem that plaintiff is in no position to question the corporate capacity of said development company (*Burrows Shoe Co., Inc.*, v. *Brotherton*, 106 Cal. App. 162 [288 Pac. 879]), and it does not appear that defendants Barteaux and Elliott owned all the stock of such corporation or were its *alter ego*. Mr. Cameron, the trust officer of defendant bank, on cross-examination by plaintiff testified that the Calivalli Farms Company had the sale of the land, while the Calivalli Development Company agreed to put in the improvements. It also appears without contradiction that defendant Elliott was sales manager. ▮ That Calivalli Farms Company had the sale of the land as testified by the witness Cameron is shown by a plat of the tract and some posters advertising the tract purporting to be put out by ''Calivalli Farms Company'', introduced in evidence by plaintiff. The mere name ''raises no presumption whatever that it is an incorporated company, . . . nor is there any other proof of the fact in the case''. (*Briggs* v. *McCullough*, 36 Cal. 542, 550.) The language used in the case cited is particularly

appropriate here, so far as the name Calivalli Farms Company is concerned.

Plaintiff testified that he was taken out to the property by a Mrs. Ward and a Mr. Johnston; that he found a large pavilion there in which a lecturer named Claude Adams told him the lands were well adapted to the growing and successful raising and profitable marketing of Kadota figs, and that the climatic conditions were especially suited to such planting and cultivation. As to the truth of such evidence there is a sharp conflict. Among other statements made by Adams, according to plaintiff's testimony, was one to the effect that they would plant potatoes each year the fig trees were growing, which should return $300 per acre per year, and that the third year the figs would produce $100, making the total revenue to the buyer in three years $1,000, which statement might under the evidence be inferred to have been one made without any intention of carrying it into effect.

Inasmuch as the evidence does not show that Calivalli Farms Company was a corporation, but does show that defendant Barteaux under the trust agreement was purchasing the property under an agreement to improve and sell the same, and that he went with plaintiff to the bank to obtain his first purchase agreement; that defendant Elliott was the sales manager of the selling enterprise and that both at times introduced the lecturer, and that the first contracts to sink wells on the tracts were apparently made with "Barteaux & Elliott" prior to the organization of the Calivalli Development Company, we cannot say that there is not sufficient evidence to sustain the implied finding of the jury that such defendants, at least, were responsible for the representations made by the lecturer and other selling agents which induced the purchases by plaintiff. If the Calivalli Farms Company was in fact a corporation and not merely a name under which Barteaux and Elliott were engaged in selling the tract, it was within the power of such defendants to have produced such evidence; and they cannot now complain if the jury found against them on evidence they might have controverted but did not. There would seem to be a fair presumption as the record stands that if they had spoken on the subject it would have removed all

doubt as to the inference so drawn by the jury being correct. (*Bone* v. *Hayes,* 154 Cal. 759, 765 [99 Pac. 172].)

A more serious question ‧ is whether or not the complaint as amended states a cause of action. We are of the opinion that it presents a very defectively stated cause of action. The amendment did not correct the defects which made the original pleading obnoxious to the demurrer which was sustained. The action is brought for the recovery of the amounts paid on the respective contracts, and yet fails to allege a rescission. No objection seems to have been made to the complaint as amended, however, and the fourth separate defense of defendants' answer alleges the service of a notice of rescission by plaintiff and demand for the repayment of the money paid on such contracts, and that relying thereon defendants sold the land involved to third persons, who expended large sums in improving the same. This would seem to remedy such defect. See the case of *Shively* v. *Semi-Tropical L. & W. Co.,* 99 Cal. 259 [33 Pac. 848, 849], where a similarly defective complaint was held to be cured by a similar allegation in the answer, the court saying: "That a defective complaint may be cured by admissions of the answer is well settled." See, also, *Schenck* v. *Hartford Fire Ins. Co.,* 71 Cal. 28 [11 Pac. 807], where the answer set out matter necessary to be alleged in the complaint to state a cause of action.

Judgment reversed as to appellant Union Bank & Trust Company and affirmed as to appellants Barteaux and Elliott.

Stephens, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 28, 1934, and the following opinion then rendered thereon:

THE COURT.—Petition for rehearing denied.

Appellants Barteaux and Elliott urged in their petition for a rehearing as to them that under the rule laid down in *McDonald* v. *Southern California Ry. Co.,* 101 Cal. 206 [35 Pac. 643], and other cases cited, the allegations of rescission as a defense cannot be used as evidence of such fact; that there being no other proof of such fact there could be no recovery, and that the statement used in one defense cannot be used as evidence upon another issue, be-

cause to so hold would deprive the defendant of the benefit of his denials.

■ In our opinion such rule is not applicable to the situation disclosed by the pleadings and evidence in the instant case. The complaint here was in four counts, each of them duplicates of the other except for the fact that a different contract to purchase was involved in each count and different amounts were paid on each contract. The allegations in each were sufficient to charge fraudulent representations by the defendants inducing the execution of such contract, exclusive of the paragraph charging the use of the name Calivalli Development Company by defendants. By each count it is sought to recover the payments made on account thereof, but none alleges that the contract was rescinded by the buyer. There is no allegation of a cause of action based on the common counts. The answer contains a specific denial of each paragraph of each count, except that the execution of the contract is admitted, and as an affirmative and separate defense alleges, first, that the Union Bank & Trust Company had no interest in the property "sold by the Calivalli Farms Company to the plaintiff", other than in its capacity as trustee; second, that plaintiff made an independent investigation before contracting to purchase, and third, that plaintiff elected to rescind such contracts and served each defendant with a notice in writing of such rescission, together with a demand for the payment of all moneys paid by him thereof, and that defendants subsequent to the service of such notices of rescission, "relying upon plaintiff's election to rescind", sold the property covered by such agreements, etc. There is no defense set up in such answer of which defendants are deprived the benefit.

■ The case made by the complaint is lacking only in showing that the damage done by the alleged fraudulent representations consisted of the money paid on the contracts alleged to have been fraudulently induced. Defendants by their answer supply such lack by showing that as a matter of fact there was a rescission of such contracts made by the plaintiff. That being the case, the only issue for the jury to determine was whether or not the contracts were fraudulently induced as alleged in the complaint and denied in the answer. Having so found, and it appearing

without question, by reason of defendants' allegations that the damages consisted of the payments found to be made, it would seem to be a senseless thing to send the case back for a new trial when all the real issues between the parties were determined. The relief granted would seem to be clearly within the case made by the complaint and embraced within the issue (sec. 580, Code Civ. Proc.), and defendants would not appear to be in a position to complain that they themselves by their pleading made unimportant, by conceding it, what might have been a very important issue if it had not been conceded by them. ■ "The rule is well settled that a complaint which lacks the averment of a fact essential to a cause of action may be so aided by the averment of that fact in the answer as to uphold a judgment thereon." (*Daggett* v. *Gray*, 110 Cal. 169, 172 [42 Pac. 568, 569].) And it is equally well settled that a "defendant, by answering, may enlarge the scope of the relief to an extent consistent with the pleadings and 'embraced within the issue' ". (*Woods C. I. Ditch Co.* v. *Porter S. Ditch Co.*, 173 Cal. 149, 153 [159 Pac. 427, 429].)

■ Nor in our opinion can petitioning defendants save themselves from the effect of the acts found by the jury to have been fraudulently committed by them, by pointing to the provisions inserted in the contract by the Union Bank & Trust Company for its protection from representations not contained within the written contracts, made by selling agents unknown to such company and employed by others. If such clause could be so construed it would in our opinion be void under section 1668 of the Civil Code.

This is not an action for rescission, but one for damages for the alleged wrongful inducements, after rescission accomplished.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 26, 1934.