[Civ. No. 12772.   Second Appellate District, Division Two.—January 22, 1941.]

PAUL BECK, Respondent, v. BEN SIROTA, Appellant.

554

Gibson, Dunn & Crutcher and Philip C. Sterry for Appellant.

Frances J. Gabel and J. L. Kearney for Respondent.

MOORE, P. J.—Defendant appeals from a judgment of $10,000 pursuant to verdict for personal injuries suffered by plaintiff September 14, 1937, while working as cleaner of a wall. The judgment followed the second trial.

The bases of the appeal are: (1) The insufficiency of the evidence; (2) fatal variance between plaintiff's pleading and proof; (3) error in giving certain instructions; (4) errors in refusing certain instructions.

(1) On November 14, 1937, one Bates had a contract to wash the walls of the building occupied by the Southern California Gas Co., located near the corner of 8th and Flower Streets in the city of Los Angeles. Plaintiff was one of his workmen. Defendant operated a parking station on the north side of the building and the witness Welch was in charge of the parking station at the time of the occurrence that resulted in plaintiff's injuries. Prior to commencing the washing of

the building, Bates contracted with the defendant to have the cars moved away from the wall after 8 P. M. so that it would be safe for his men to work there and to prevent injuries to the cars by chemicals used in washing the building. Welch knew of the contract between Bates and defendant and pursuant thereto, and at plaintiff's request, undertook to move some 10 or 12 cars parked along the north wall, prior to plaintiff's beginning work at about 8 o'clock in the evening. In order to apply the chemicals to the building, plaintiff stood upon a scaffold which hung from the roof. Having mounted the scaffold, he took the 150-foot cord which had been plugged into an outlet on the sixth floor, turned on the 5 100-watt bulbs and then lowered the looped cord to the ground 39 feet below. In order to see that it was safe to move the cars, Welch walked between the building and the cars to inspect them and removed all cars standing directly below the scaffold, including car No. 7. After checking out a customer, he returned to remove car No. 6. He stepped on its running board and looked toward the building wall but saw no cord suspended. He entered the car with the windows closed, gunned the motor, pulled forward about 15 feet when he felt a sharp tug on the vehicle. He stopped the car and learned that the light cord hanging from the scaffold had become attached to the rear bumper and had jerked down the scaffold throwing plaintiff to the ground.

Plaintiff was about 25 years of age, had worked at his trade for eleven months, washing buildings and cleaning machinery and tanks. He sustained a broken back, broken feet and a split of the crotch. He was confined in the hospital for 96 days; walked on crutches for six or seven weeks and was suffering from pain in his feet and back at the time of the trial two years subsequent.

▮ Appellant claims that by reason of the fact that car No. 6 was 3 feet west of the scaffold he was not required to remove it to accommodate Bates and his workmen. This is answered by the fact that the parties themselves construed their agreement to mean that he should remove car No. 6 to another part of the lot and that construction is evidenced by the fact that Welch, without any specific order or special agreement, was attempting to remove the car at the time he dragged plaintiff from the scaffold. Whether car No. 6 was partially under the scaffold or entirely out is of no moment. The best that can be said for appellant is that the car was at

the wall and in close proximity to the area directly under the scaffold. This would have subjected the car to the spray of the chemicals used by the cleaners. At the same time it was reasonable to anticipate that ropes and cords would be suspended from the scaffold and would contact the cars below. The removal of car No. 6 was undertaken pursuant to the contract as well as from a sense of duty to an invitee. In his attempt, Welch failed to exercise reasonable care in that he failed to go around it as he had done prior to moving the cars directly beneath the scaffold. The knowledge of the average person that ropes and cords may sway and swing when suspended from an elevation of 40 feet was sufficient to put Welch on notice that the suspended cord was likely to attach to some part of an automobile within 5 feet of the point perpendicularly below the position where plaintiff had stood as he let down the cord. This operation of plaintiff was done with care as a task to be performed in the course of cleaning the wall. The use of electric lights by plaintiff was known to defendant and his employees. In view of the fact that the scaffold had to be raised and lowered, it was readily to be understood that the cord would necessarily hang below the scaffold when the latter was above the earth. Furthermore, the consciousness of Welch that the loop of the cord might have caught on to a car was evidenced by his careful inspection of the cars removed prior to his moving car No. 6. His anticipation of danger was further demonstrated by his mounting the running-board of car No. 6 to ascertain whether it could be moved with safety.

The jury had to determine (1) Whether defendant was negligent and if so, (2) whether his negligence was the sole proximate cause of plaintiff's fall. In making a finding upon these questions, they had to consider (3) whether plaintiff was negligent and if so (4) whether his negligence contributed to his injuries. In determining these questions, the jury were privileged to consider the defendant's statutory obligation to an invitee upon his premises as well as his contractual duty.

That there was substantial evidence to support the verdict is established by the foregoing recitals. Merely because it might have been inferred that defendant was not negligent or that plaintiff was negligent and that his negligence contributed to his injuries, is not sufficient to upset

the verdict. It was for the jury to choose between the contradictory statements or contradictory inferences and by such choice this court is bound. (*Raggio* v. *Mallory*, 10 Cal. (2d) 723 [76 Pac. (2d) 660]; *People* v. *Crownover*, 34 Cal. App. (2d) 7 [92 Pac. (2d) 929].) By thus choosing they decided that defendant was negligent and that his negligence was the sole proximate cause of plaintiff's injuries. A reversal is proper only where there is no substantial evidence in support of the verdict. ■ In dealing with appeals involving a conflict of testimony, the reviewing court is not privileged to upset the findings of a jury merely because there are several witnesses in support of a fact as against one witness whose testimony convinced the jury. (*People* v. *Crownover, supra.*) The jury is the exclusive judge of the weight and value of the inference that may be drawn from evidence and a usurpation by an appellate court of the power to determine the facts would be contrary to law. Also the fact that some inference other than that which the jury drew from the evidence in the case is possible is not sufficient to warrant the interference with the jury's verdict by the appellate court. (*Hamilton* v. *Pacific Elec. Ry. Co.*, 12 Cal. (2d) 598 [86 Pac. (2d) 829].)

■ Ordinary care is a relative term. The same *quantum* of care that might have been exercised by defendant in removing a farm wagon from the wall is much less than that which was imposed upon defendant in moving a dangerous instrumentality, such as a modern automobile. The amount of care must be in proportion to the danger to be avoided and the consequences reasonably to be anticipated. Thus was the obligation placed upon defendant enlarged by reason of the dangerous nature of the objects to be moved. (19 Cal. Jur. 579.) ■ A person is justified in assuming that he is not exposed to a danger which can come to him only from a breach of a duty owed him by another. (45 C. J. 954.)

■ Defendant's obligation was two-fold, *ex contractu* and *ex delicto*. Although the contract with plaintiff's employer imposed upon him the necessity of exercising reasonable care, the same obligation obtains by virtue of statute. Defendant owed the duty to plaintiff as an invitee to exercise reasonable care in removing the automobile. (Civ. Code, sec. 1708; 45 C. J. 838; 19 Cal. Jur. 618.) Such care imposed the task of ascertaining whether before driving a car away from the

space it occupied against the wall it was likely to be hooked to a looped cord suspended from the scaffold. Less than that would have been less than ordinary care. But that obligation was increased by virtue of the contract he had made with plaintiff's employer to move the cars "so it would be safe" for plaintiff and his fellow workmen on the scaffold. (1 R. C. L. 321.) His promise was coincidental with his statutory obligation. (*Jones* v. *Kelly*, 208 Cal. 251 [280 Pac. 942].) Plaintiff had a right to presume that the defendant and his agents would perform their duty by removing the machines in such a manner as would avoid injuring the cleaners. ▮ It is a general rule that every person has a right to presume that every other person has performed his duty and obeyed the law. In the absence of reasonable grounds to think otherwise, it is not negligence for him to assume that he is not exposed to danger which can come to him only from a violation of law or duty by such other person. (*Robbiano* v. *Bovet*, 218 Cal. 589, at 597 [24 Pac. (2d) 466] ; *Harris* v. *Johnson*, 174 Cal. 55, at 58 [161 Pac. 1155, Ann. Cas. 1918E, 560, L. R. A. 1917C, 477] ; *Moreno* v. *Los Angeles Transfer Co.*, 44 Cal. App. 551 [186 Pac. 800] ; *Medlin* v. *Spazier*, 23 Cal. App. 242 [137 Pac. 1078].)

▮ The jury having determined under proper instructions that plaintiff was not guilty of contributory negligence, their finding upon that point will not be disturbed so long as reasonable minds might have differed upon the question as to whether the acts of plaintiff under the circumstances constituted negligence on his part. (*Seller* v. *Market Street Railway Co.*, 139 Cal. 268, 271 [72 Pac. 1006] ; *Hamilton* v. *P. E. Ry. Co., supra.*)

▮ (2) Appellant contends that there is a fatal variance between the *allegata* and the *probata* in that plaintiff alleged that as he was standing upon the said platform or scaffold, the defendant, well knowing that ropes and wiring were hanging therefrom to the ground, negligently parked an automobile in the space below the scaffold and carelessly moved the same with rope or wiring from the scaffold caught around a fender, causing the scaffold to be swung out throwing plaintiff to the ground and injuring him. But, contends appellant, the proof was that before plaintiff mounted the scaffold the cars directly beneath it had been moved and that that car No. 6, which brought plaintiff to his sorrow, was parked three

feet west of the scaffold and that the light cord at the time plaintiff mounted to begin his work was not attached to the automobile or near it. But the narrow construction given the contract by appellant is not in keeping with the circumstances surrounding the incident or with the understanding of both parties as to the nature of the obligation imposed upon defendant. Steam and acids sprayed upon a brick or concrete wall do not converge in a narrow channel by which they find their way to earth. They are easy victims of the winds and air currents that from an altitude of 40 feet are conveyed to neighboring spaces, too often farther than 3 feet horizontally from the point at which they have been applied to the surface. If the agreement contemplated the safety of the cleaners, that safety could have been imperiled only by the ropes and cords suspended from the scaffold to the space below or in immediate proximity thereto. Not only were the issues created by the allegation of the complaint, the substance of which is given above, but the issue was broadened by the allegations of the answer to the effect that defendant had contracted to remove the automobiles from the wall underneath the scaffold and would keep the cars from being parked in that space while the cleaners were at their work to the end that they might work in safety. With the issues thus broadened, it was competent for plaintiff to prove that the safety of the workmen on the scaffold was to be secured by the careful removal of the cars parked against the wall. To grant the contention of appellant would operate to defeat justice by adhering to an overwrought tecnnicality in the construction of the language of the agreement and the duties of defendant to his invitees. The defendant having thus enlarged the issues, they embraced the negligence of defendant to an invitee upon his premises. (*Wantz* v. *Union Bank, etc.,* 137 Cal. App. 98 [29 Pac. (2d) 882, 32 Pac. (2d) 826]; *Woods C. I. Ditch Co.* v. *Porter, etc.,* 173 Cal. 149 [159 Pac. 427].)

Furthermore since the purpose of an allegation is to apprise the defendant of the claims of the plaintiff and of the facts he intends to prove, the failure of a complaint to indicate all of the facts to be relied on is cured where one trial has already occurred and the facts adduced at the second trial are identical with those presented at the first. (*Bridge* v. *New Amsterdam Cas. Co.,* 129 Cal. App. 355 [19 Pac. (2d) 76].) Therefore, defendant cannot plead prejudice or surprise by plaintiff's proof that the removal of car No. 6 caused

560

his injuries; under these circumstances to reverse the judgment because of a variance would do violence to section 4½ of article VI of the Constitution, which forbids a reversal except for prejudicial error. The theory of the pleading is not the controlling doctrine under such circumstances. (*California Western States L. Ins. Co. v. Tucker,* 15 Cal. (2d) 69 [98 Pac. (2d) 511].) If a cause of action has been stated and proved, appellate courts are concerned with the facts established provided the adversary party has had full opportunity to present his evidence and his argument to the trial court. (19 Cal. Jur. 692, sec. 115.) The authorities cited by appellant in support of his claim of a variance (*Brown v. Northern Cal. P. Co.,* 14 Cal. App. 651 [114 Pac. 54, 74]; *McKeon v. Lissner,* 193 Cal. 297 [223 Pac. 965]; *Marin Mutual Water Dist. v. Peninsula Pav. Co.,* 34 Cal. App. (2d) 647 [94 Pac. (2d) 404]) do not apply. In neither the Brown case nor the Marin case was any negligence proved. In the McKeon case the allegation of negligence consisted in defendant's failure to keep the elevator and its operating apparatus in repair. But at the trial the only proof of negligence was that the hallway leading to the elevator was dark and confusing which condition was the proximate cause of plaintiff's injuries.

▆▆▆ (3) Plaintiff requested the court to instruct the jury as follows: "You are instructed that the defendant was required to use such care as an ordinarily prudent person would have used for the safety of workmen who might be engaged in work where the movement of any automobile on said parking lot would endanger the safety of said workman. If you find that the defendant failed to exercise such care for the safety of Paul Beck as an ordinarily prudent person would have used, under the same or similar circumstances, you will find that the defendant was negligent in that regard." This instruction was not error. It would have been in better form had the word "any" been omitted therefrom, but no issue arose with respect to any car outside of the area immediately below the scaffold except car No. 6. There was no dispute as to the duty of defendant to move with reasonable care the car from the space seven. Indeed appellant's brief stated "Welch testified that prior to moving the car in lane 7 *he walked between the rear of the cars and the building wall to see if there were any ropes but did not do so when he returned a moment later to move the car in lane 6.*" These were the only two cars specifically discussed

in the course of the trial. Defendant's agent thus demonstrated his own caution as well as defendant's view of his obligation under the circumstances in ascertaining whether there was any rope affixed to the car in lane 6. Appellant proceeds upon the theory that, because some of the evidence was that car No. 6 was some 3 feet west of the west end of the scaffold, it was not immediately beneath the scaffold and therefore he was not obliged to remove it in order to give safety to the cleaners or to the cars that were parked near the wall. ▆▆ The law disregards trifles. (Civ. Code, sec. 3533.) But in view of the fact that the plaintiff was cleaning the wall with steam and acids which, on being blown against the building would have been detrimental to any car sprayed with it, we cannot conclude otherwise than that a fair interpretation of the contract between Bates and Sirota required Sirota to remove the cars which were in such close proximity to the operations of the workmen as to imperil the safety of any automobile. Likewise, in view of the fact that there was no car by the wall and yet outside of the space directly beneath the scaffold except car No. 6, the instruction with reference to ''any car'' could have directed the attention of the jury to no car other than car 6. The attempt of appellant to apply the rule laid down in *Marovich* v. *Central etc. Co.,* 191 Cal. 295 [216 Pac. 595], is unavailing. In that case, and in others there cited, specific allegations of negligence are made which the court held should have guided the trial court in giving instructions with reference to the negligence charged. But in view of the construction given by the parties themselves and of the fact that a reasonable interpretation of the contract would require the defendant to move cars that were sufficiently near the scaffold to suffer harm from the cleaning operations, it cannot be said that the phrase in plaintiff's pleadings in describing ''the space immediately below said scaffold'' could mean only the cars perpendicularly beneath the scaffold.

▆▆ Appellant further complains that in view of plaintiff's instruction No. 27 the court should have read defendant's requested instruction XXXIV. That instruction reads as follows: ''Plaintiff specifically alleges that at the time of the accident the defendant, knowing that ropes and wiring were hanging from the scaffold to the ground, negligently parked, or permitted to be parked, an automobile in the space immediately below said scaffold, and negligently moved

the same with a rope or wire from said scaffold caught around a fender or bumper of said automobile thereby causing said scaffold to be swung out from the wall of the building throwing plaintiff to the ground. Unless plaintiff proves these allegations of the complaint by a preponderance of the evidence he cannot recover herein.'' But instruction III embraced substantially everything contained in his instruction XXXIV. Furthermore, if anything suggested in instruction XXXIV is not included in defendant's instruction III, it is found in plaintiff's instruction No. 27, both of which were read to the jury.

(4) Plaintiff's instruction No. 21 given by the court reads as follows: ''At the outset of this trial, each party was entitled to the presumptions of law that every person takes ordinary care of his own concerns and that he obeys the law. These presumptions are a form of *prima facie* evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. Where there is other evidence that conflicts with such presumption, it is the jury's duty to weigh that evidence against the presumption to determine which, if either, preponderates. Such deliberations, of course, shall be related to, and in accordance with, my instructions on the burden of proof''. Appellant assigns this instruction as error and urges that, inasmuch as plaintiff and his witnesses gave their testimony with reference to the manner in which the injuries of plaintiff were received, an instruction to the effect ''that every person is presumed to take ordinary care of his own concerns and that he obeys the law'' should not have been given. In support of this proposition, appellant cites three cases, *Mundy* v. *Marshall*, 8 Cal. (2d) 294 [65 Pac. (2d) 65], *Paulsen* v. *McDuffie*, 4 Cal. (2d) 111 [47 Pac. (2d) 709], and *Speck* v. *Sarver*, (Cal. App.)* [106 Pac. (2d) 49]. In the Mundy case, the court having heard the uncontradicted testimony of eye-witnesses, instructed the jury to return a verdict for the defense. Thus, from plaintiff's own witnesses it was made clear that ''there was no room for the operation of the presumption that he (decedent) was exercising due care.'' It had been declared in the case of *Mar Shee* v. *Maryland Assurance Corp.*, 190 Cal. 1 [210 Pac. 269], that ''the pre-

*In the case of Speck v. Sarver the Supreme Court granted a hearing on December 5, 1940.

sumption cannot be deemed to give rise to a conflict unless the · presumption on the one hand is irreconcilable with the evidence on the other''. In the Paulsen case, it was established that the defendant was negligent and that under the law plaintiff had not assumed the risks of his employment. Under the United States statutes, he was entitled to all the rights and remedies granted to the railway employees under the Federal Employers Liability Act. In commenting upon the doubtful propriety of including among the instructions the presumption that plaintiff acted with ordinary care and obeyed the law, Mr. Justice Curtis observed that the presumption is evidence and *"it is difficult to say there was no place for the presumption as to plaintiff's conduct."* The judgment for plaintiff was affirmed in spite of the criticised instruction. The Speck case is not pertinent for the reason that the instruction there complained of stated ''that plaintiff is not guilty of contributory negligence''. This goes further than the presumption contained in the instruction complained of.

The giving of such instruction has been the subject of much discussion. The consensus is that it is not prejudicial error. (*Tuttle* v. *Crawford,* 8 Cal. (2d) 126 [63 Pac. (2d) 1128]; *Parker* v. *Manchester Hotel Co.,* 29 Cal. App. (2d) 446 [85 Pac. (2d) 152]; *Whicker* v. *Crescent Auto Co.,* 20 Cal. App. (2d) 240 [66 Pac. (2d) 749]; *Westberg* v. *Willde,* 14 Cal. (2d) 360, 367 [94 Pac. (2d) 590].) In the Westberg case, all possible facts with respect to the negligence of the plaintiff were before the court. The court there remarked that it was difficult to perceive how any presumption as to defendant's conduct could add to or detract from the evidence presented and held that ''the giving of such an instruction under the circumstances just related was not prejudicial''. In *Tuttle* v. *Crawford, supra,* the giving of the instruction worked no material prejudice to the defendant. ''The presumption is a natural one, and the bare code section, as given by the court, told the jury nothing that the philosophy of life and human experience do not impart to the average person'', said the court. ''No instruction was given defining the force or effect of presumptions''. In *Parker* v. *Manchester Hotel Co., supra,* at page 459, where the plaintiff had testified with respect to her own injuries, the court held that giving the instruction, even if erroneous, was not sufficiently prejudicial to justify

a reversal. See *Whicker* v. *Crescent Auto Co., supra; Varner* v. *Skov,* 20 Cal. App. (2d) 232 [67 Pac. (2d) 123]. In·the case of *Varner* v. *Skov,* the judgment was not reversed on account of the giving of the instruction, although it was assigned as error. In *Whicker* v. *Crescent Auto, supra,* an elderly woman was injured by an automobile as she stepped from the safety zone. She apparently suffered some confusion accompanying the casualty and her recollection was ''far from clear''. Neither did the testimony of the driver of the automobile destroy the probative weight of the fact presumed. It was held that where facts are admitted or established by proofs which are irreconcilable with the presumption it loses its evidentiary weight; also that there is no sound reason why the familiar doctrine that a party may contradict though not impeach his own witnesses, should not, if the circumstances are consistent with honesty and good faith, be applied when he is himself the witness.

In the instant case the trial court must have been impressed that plaintiff suffered confusion resulting from his fall from the scaffold and that he was thereby prevented from giving a clear and uncontradictory narrative of the events concerning the accident. If he was confused, he was entitled to the benefit of the presumption; if he was not confused the instruction was not prejudicial error.

(5) Appellant has assigned as error the court's refusal to give eight of his instructions, *viz.,* XX, XXIX, XXXV, XXXVII, XXXVIII, XXXIX, XL, XLI, on the ground that they were necessary to the proper presentation of his theory of the case. We have scrutinized each of them and find that they are argumentative; that they comment upon the effect of the evidence, or that they repeat the contents of instructions given. No useful purpose can be served by setting them out herein in view of the fact that the court's instructions fully and correctly advised the jury with reference to all of the issues.

Judgment is affirmed.

Wood, J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 20, 1941. Edmonds, J., voted for a hearing.