31 Cal.2d 514 (1948)
Estate of HARVEY FLEMING, Deceased. THOMAS H. KUCHEL, as State Controller, etc., Appellant,
v.
FIRST NATIONAL TRUST & SAVINGS BANK OF SAN DIEGO, as Executor, etc., Respondent.
L. A. No. 20022. 
Supreme Court of California. In Bank. 
Mar. 9, 1948.
 James W. Hickey, Inheritance Tax Attorney, Donald R. Peck, Morton L. Barker and Raymond G. LaNoue, Deputy Inheritance Tax Attorneys, for Appellant.
 Herney & Herney and Monroe & McInnis for Respondent.
 SPENCE, J.
 The State Controller has appealed from an order of the probate court declaring that no inheritance tax was payable in connection with a testamentary trust fund established for educational purposes. Appellant contests the propriety of the adjudication as a "charitable *516 exemption," in pursuance of section 13842 of the Revenue and Taxation Code, upon two grounds: (1) the nature of the bequest and (2) the scope of its authorized use. Since an analysis of the section expressive of the legislative intent sustains appellant's position upon the second ground, it will be unnecessary to consider his arguments in relation to the first.
 There is no dispute as to the facts. By his will the decedent left the residue of his estate in trust to the respondent bank, the income therefrom to be used for the purpose of aiding in the education of boys and girls of good character who are citizens of the United States. It was provided that as many awards for this purpose should be made each year as the income from the trust estate would permit; that each award should be for a sum not exceeding $200; that such awards should be used only for the purpose of paying all or a part of the tuition or other charges incurred by the recipient at any school, college or university approved by the trustee; and that payment of the certificates of award should be made by the trustee directly to the school, college or university attended or to be attended by the award holder, upon satisfactory proof that the money was to be used for that purpose. It was further provided that for the purpose of determining the young people to whom such awards were to be made, the trustee should conduct a golf tournament each year on golf courses situated in San Diego County to be selected by the trustee; that applicants must make written application for permission to enter such competition and be approved by the trustee; that awards to the number made possible by the available income each year should be made to those making the lowest scores in this tournament; and that any player making a score in excess of a certain maximum should be ineligible for such an award.
 During the probate proceedings an inheritance tax report was filed fixing the inheritance tax in connection with the above residuary trust at $5,531.29. The trustee filed objections to the report on the ground that the transfer in trust was exempt under section 13842 of the Revenue and Taxation Code, as relating to property "to be devoted exclusively" to charitable and educational purposes and "limited for use within this state." After a hearing the court found, among other things, that "the trust [was] created ... for the purpose of awarding scholarships to young men and women *517 found by the trustee to be of good moral character and to be citizens of the United States"; that "competition" therefor was "open" to all such persons; that the awards "may be [used] in any school or university approved by [the] trustee"; that the "trustee ... is a local banking institution," a "corporation operated for profit" and "located in the city of San Diego"; that "by the terms of [the] will" the "trust thereby created is to be administered in" this state and persons seeking such an award "must individually compete in a tournament to be conducted in the county of San Diego"; and that "the property [so] transferred in trust ... is ... to be used exclusively for and devoted to charitable and educational work and is limited for use within the State of California, as that term is used in section 13842 of the Revenue and Taxation Code." As a conclusion of law, it was declared that "the property so transferred in trust is exempt from the inheritance tax." Accordingly, an order was entered sustaining the trustee's objections to the inheritance tax report and adjudging that no inheritance tax was due on the residuary trust. This appeal followed.
 Section 13842 of the Revenue and Taxation Code provides, so far as here pertinent, as follows: "Property transferred to any ... corporation ... in trust exclusively for or to be devoted exclusively to any charitable, educational, public, or other like work, is exempt from the [inheritance] tax" if "(a) the ... corporation ... is organized solely for charitable, educational, public, or other like work under the laws of this state or of the United States"; or "(b) the property transferred is limited for use within this state." It is conceded that condition (a) has no application here since the trustee is a banking corporation, but the parties are in dispute with regard to the meaning to be ascribed to condition (b) as determinative of the exemption in question. In resolving the problem of statutory construction so presented, it will be assumed that the trust created in aid of education is sufficiently broad in scope of benefit as to classify it as "charitable" in character within the purport of said section 13842. (Cf., Estate of Purington, 199 Cal. 661 [250 P. 657]; Estate of Bartlett, 122 Cal.App. 375 [10 P.2d 126]; Estate of Bailey, 19 Cal.App. 2d 135 [65 P.2d 102].)
 [1] Appellant maintains that the specification "limited for use within this state" connotes "a charitable use within *518 this state, a 'use' which is calculated to alleviate some local condition which demands charitable action by the people of this state; and this would demand in turn that the ultimate destination of the trust funds must be here, and not elsewhere." It is agreed that the young people who may receive the scholarships contemplated by the bequest are not limited to residents of this state, and that the recipients of the awards may attend schools outside of this state, if those schools are approved by the trustee. The terms of the bequest thus authorize application of the benefits of the trust fund beyond the borders of this state. Respondent claims that this is an immaterial circumstance for the phrase "use within this state" relates to "the question of where, when, and how the trust is to be administered." Accordingly, reference is made to these prevailing factors under the operative design of the bequest--that the trustee is a local corporation doing business in this state, that it will retain and invest the property here, that it will here distribute the certificates of award to the beneficiaries, who must be personally present in this state and prove here, by their efforts in the yearly golf tournament, their eligibility to share in the scholarship benefits--as qualifying the trust transfer for the tax exemption. But a reasonable construction of the disputed statutory wording indicates that it was the legislative purpose that the exemption shall apply only where the property, or the income therefrom, is marked for actual use in benefit of the people of this state, and that the mere provision for the management or administration within this state of the corpus of the trust does not satisfy the premise of the exemption.
 In considering the import of condition (b) in section 13842 of the Revenue and Taxation Code, the history of the tax exemption of property transferred to a corporation for charitable uses is significant. Formerly, our statute was so "broad and comprehensive" in its language that it could not be construed to limit such exemption to a domestic as distinguished from a foreign corporation, as was done in some states. (Stats. 1915, ch. 189, p. 421; Estate of Fiske, 178 Cal. 116, 117-118 [172 P. 390].) Then in 1917, the statute was amended so as to provide that the exemption applied only if "such ... corporation ... be organized or existing under the laws of this state or that the property transferred be limited for use within this state." (Stats. 1917, ch. 589, p. 886.) In so changing the law either one, but not both, of these conditions *519 was required to create the exemption. (Estate of Irwin, 196 Cal. 366, 371-372 [237 P. 1074].) While such legislation continued to reflect the policy to encourage benevolence and charity, it correlated such factors with promotion of the welfare of the state by decidedly narrowing the scope of the exemption. This theory of tax relief stems from the premise that the corporations or organizations so favored either directly lighten the burden of the state by rendering beneficences which the state would otherwise be obliged to furnish or indirectly further the interests of the state by the public benefit they promote. (Kidder, State Inheritance Tax and Taxability of Trusts, ch. xv, pp. 425-426; Carter v. Whitcomb, 74 N.H. 482 [69 A. 779, 784, 17 L.R.A. N.S. 733]; People v. O'Donnell, 327 Ill. 474 [158 N.E. 727, 728].) As so introduced into our law in 1917, the alternative grounds of the exemption have prevailed through the years to their present form of expression in conditions (a) and (b) of section 13842 of the Revenue and Taxation Code, as above quoted.
 [2] It is true that it is "the character of the transferee" that is the "first consideration under the terms of the [exemption] proviso" and that "it is only in the event that the transferee does not so qualify in purpose and place of organization that the restriction as to 'use within this state' becomes material." (Estate of Barter, 30 Cal.2d 549, 555 [184 P.2d 305].) Accordingly, if respondent as trustee were a local charitable or nonprofit educational institution, beneficial as distinguished from administrative use of the trust property in this state would not be necessary in order to merit the exemption. In other words, then the distribution of the scholarship awards to persons regardless of their place of residence or of the ultimate use of the benefits would be of no consequence in qualifying respondent for the exemption. But reason for such variant treatment might be found in the policy of the law to encourage and aid locally organized corporations engaged in charitable or public work of a nonprofit nature, most of which, as a matter of practical consideration, are undoubtedly so constituted in structure and purpose that they carry on their beneficent activities wholly within the state and so bestow their benefits to ultimate local advantage. However, in the case of a property transfer to a corporation organized for profit, and so operating on a wholly different plane, the Legislature appears to have deemed it appropriate to add as a prerequisite for establishing eligibility *520 for the tax exemption that the "property transferred" for charitable purposes "be limited for use within this state." [3] The inheritance tax law is purely a revenue producing measure, and it is reasonable to assume that the Legislature, in relieving a noncharitable corporation from payment of the tax on a charitable bequest, intended that the benefits from "use" of the property redound to the people within the state as a compensating factor. These were matters for the Legislature to determine in the enactment of the "charitable exemption" provisions, and the interpretation of the "use" of property transferred to a noncharitable corporation as requiring the charity to be exercised or the education to be bestowed within the state appears to be not only consistent with the language used but also with the public purpose motivating the exemption. While gifts for charitable purposes are highly favored in this state (Estate of Yule, 57 Cal.App.2d 652, 654 [135 P.2d 386]) and exemptions in favor of charitable organizations are liberally construed so as not to diminish their available resources in the distribution of their ultimate benefits (Estate of Barter, supra, 30 Cal.2d 549, 554-555), the foregoing analysis of the legislative intent with respect to the exemption condition in question rests wholly upon the text and scope of the statute itself rather than upon the principle that exemptions from taxation must be strictly construed against those claiming the benefit of them (cf., Helping Hand Home for Children v. County of San Diego, 26 Cal.App.2d 452, 459 [78 P.2d 778]).
 Nor do the extensions of the "charitable exemption" law since the primary revision of the scope of the statute in 1917, as above noted, militate against these views as to the prevailing operative scheme of the legislation and the correlating factors motivating the tax relief in question. Thus in 1929, the inheritance tax statute was amended to add a reciprocal clause permitting such exemption in this state where similar treatment was accorded us by the laws of other states. (Stats. 1929, ch. 844, p. 1840.) Justification for such reciprocal provision lies in the fact that it may well serve to encourage other states to extend their laws exempting charities to include those located here (McLaughlin v. Poucher, 127 Conn. 441 [17 A.2d 767, 769]) and so redound to mutual public benefit on a strictly quid pro quo basis. Then in 1939, came the further addition to the statute to allow the exemption in cases where the corporation in question was organized solely *521 for charitable, educational, and like purposes under the laws of the United States. (Stats. 1939, ch. 694, p. 2210.) Outstanding example of such charitable corporation is the American Red Cross. Its funds are raised through a national effort and expended not only to furnish national, but world-wide relief. Consistent with the broad policy of such charitable aid, it is entirely reasonable to assume that the Legislature intended an exemption in favor of such corporation as an exception to the overall policy of limiting the tax relief to local charities, which normally would confine their activities within the state, and determined that gifts to such a nationally organized charitable corporation should not be diminished by exactions of this state. Moreover, it cannot be overlooked that in the case of such charitable organization as the American Red Cross, this state, participating as a sister state in the accomplishment of a national charitable purpose or aim, stands to share in the funds raised in the event of a sudden disaster or calamity. Such extensions of the "charitable exemption" law, supplementing the primary provisos enacted in 1917, which are now expressed in section 13842 of the Revenue and Taxation Code as above quoted, rest on independent considerations of public policy and cannot reasonably be regarded as indicating an intent on the part of the Legislature to relax the restricted significance which the words "limited for use within this state" would ordinarily suggest as the measure for the exemption in connection with a charitable gift to a corporation organized for profit.
 [4] Nor can it be assumed in aid of respondent that since it is a local, though noncharitable corporation, the bequest in promotion of education may be confined in application to residents of this state or to local schools, so as to establish "use" of the "property transferred" for the ultimate benefit of the people of this state. The language of the statute creating the exemption in question clearly evidences the legislative intent that the limitation as to "use within this state" must be expressed by the terms of the testamentary bequest. (See In re Colman's Estate, 187 Wash. 312 [60 P.2d 113, 116]; Presbyterian Church in United States v. Sheppard, (Tex. Civ.App.), 198 S.W.2d 282, 285.) In resolving a like question of eligibility for a charitable exemption dependent on "use within the state," it was aptly said in In re Thomas' Estate, 185 Wash. 113 [53 P.2d 305, at page 307], that "what it would be in the power of the corporation to do rather than *522 what it may be disposed to do" is the controlling factor.
 [5] Respondent finally urges as ground for the charitable exemption a further provision in the bequest directing that after the "corpus of the trust estate" is "built up to a [stated] value," the "trustee shall pay ten per cent (10%) of the net income thereof" per year "to Mercy Hospital of San Diego, a corporation, to be used for its general eleemosynary purposes ...." But such ultimate distribution would not affect the condition of the exemption to be met by respondent. A similar argument was presented in the case of Tax Commission of Ohio v. Security Savings Bank & Trust Co., 117 Ohio 443 [159 N.E. 570]. There the testator provided that his estate should be left in trust and that the income should accumulate for a period of not less than 50, nor more than 60, years after which it should be distributed to charity. In denying the charitable exemption sought by the trustee bank, the court said at page 572 [159 N.E.]: "That it was the purpose of the testator that that portion of his estate here under consideration should ultimately be distributed as a charity, or at least substantially as a charity, cannot be controverted. Neither can it be controverted that it was the purpose of the testator that such portion of his estate was to be used for the period of not less than 50, nor more than 60, years exclusively in a commercial way and for profit. ... The duty of the trustee during such period, instead of being a duty to dispense a charity, is a duty to take the estate as a nucleus, and, through the channels of commerce, to earn and accumulate, by such employment of the estate, an estate many times the value of the estate devised, ... Does such exclusive employment of an estate for so long a period constitute a use of such estate 'for purposes only of public charity?' ... It would seem that ... the Legislature had in mind the exclusion from the exception of just such estates as this; that it did not purpose to exempt from the succession tax estates that were to be employed partially for charity and partially for purposes other than charity." In like manner here the Legislature has indicated its intent not to extend to a noncharitable corporation the exemption with respect to a charitable bequest unless it is "limited for use within this state" as above construed, and ultimate partial compliance with such condition will not suffice to bring respondent within the scope thereof.
 [6] There being no dispute as to the facts in this case, *523 the matter of the application and construction of the "charitable exemption" provisions of the inheritance tax law in relation to the terms of the bequest here involved becomes purely a question of law. Under such circumstances a reviewing court is not bound by the construction thereof by the probate court, but must "make the final determination in accordance with the applicable principles of law." (Estate of Platt, 21 Cal.2d 343, 352 [131 P.2d 825].)
 [7] The order insofar as it exempts respondent from payment of an inheritance tax upon the bequest in question is reversed.
 Gibson, C.J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.