**DUFFY et al. v. BIRMINGHAM et al.**
**No. 14320.**

United States Court of Appeals,
Eighth Circuit.
July 3, 1951.

Elmer M. Jones and John Hale, Burlington, Iowa (J. C. Pryor, Burlington, Iowa, on the brief), for appellants.

Edward J. P. Zimmerman, Special Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Hilbert P. Zarky, and John M. Kelley, Jr., Special Assts. to the Atty. Gen., William R. Hart, U. S. Atty., Des Moines, Iowa, and William R. Sheridan, Asst. U. S. Atty., Keokuk, Iowa, on the brief), for appellees.

Before GARDNER, Chief Judge, and RIDDICK and COLLET, Circuit Judges.

RIDDICK, Circuit Judge.

The question is whether taxpayer, the Eastman Memorial Trust, was organized and operated exclusively for charitable purposes within the meaning of section 101(6) of the Internal Revenue Code, 26 U.S.C., 1946 Edition, section 101(6), which exempts from income taxation, "Corporations, and any community chest, fund, or foundation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation." The Commissioner determined deficiencies in taxpayer's income tax returns for the years 1942 to 1945, inclusive. In each instance the taxpayer paid the deficiency determined against it, and, its claims for refunds being denied, brought this action for the recovery of the sums paid, claiming exemption as an institution organized and operated exclusively for charitable purposes. This appeal is from a judgment of the District Court dismissing the action.

The facts are not in dispute. At the instance of Mrs. Millie Eastman, widow of a former president of the company, the Board of Directors of the Chittenden-Eastman Company, an Iowa corporation, created the Eastman Memorial Trust. Three trustees were appointed to administer the trust with power to appoint their successors in case of vacancies, subject to the limitation that two of the trustees should at all times be stockholders of the company or its successor in business. The trustees were authorized to purchase from Mrs. Eastman shares of the preferred and common stock of the company,[1] to deliver to Mrs. Eastman in payment for the stock the promissory note of the taxpayer in the principal amount of $275,000, bearing interest at one per cent per annum and payable only from dividends on the shares purchased.[2] The trustees were prohibited from selling or transferring any of the stock in the company purchased from Mrs. Eastman. Payments on the note to Mrs. Eastman were to be made promptly upon receipt of dividends on the stock.[3] The trustees were authorized to accept contributions to the trust estate from others.[4]

The trust was prohibited from expending any of its income for the purposes for

1. The value of the shares purchased from Mrs. Eastman was in excess of $500,000 at the time of the purchase.

2. This transaction was completed by the delivery of the shares of stock to the trust and the execution and delivery of the note to Mrs. Eastman.

3. The income of the trust during the taxable years 1942 to 1945 was approximately $109,000. Payments to Mrs. Eastman on the note amounted to approximately $93,000 during the same period.

4. During the taxable period contributions to the trust estate from others were $1,100, $100 from the company and $1,000 from the estate of a deceased employee.

which it was created until its obligation to Mrs. Eastman was paid in full. Thereafter, the trustees were directed to set aside ten per cent of the trust income for the creation of a Pension Reserve Fund of $20,000, to maintain the fund, and to disburse the remaining trust income for the following purposes:

1. Pensions to employees who had voluntarily retired from the company's service after serving 25 years and attaining a specified age. Within an express limitation of the maximum amount payable to any individual, the amount of the pension in each case was "subject to the discretion and authorized by" the action of the Board of Directors of the company.

2. Pensions to employees retired after 20 years service, "the granting and the amount of such pensions to be subject to the discretion and authorized by the action of the Board of Directors."

3. After the payment of the pensions to retired employees, if in the judgment of the trustees the financial condition of the trust is such as to secure the continuance of pensions granted and the payment of pensions to those employees shortly to become eligible for pensions, the trustees were commanded to pay the remaining net income of the trust in each year to active employees of the company as "additional compensation." The employees entitled to "additional compensation" included those employed for salaries or commissions, as well as those employed for wages.

4. A temporary allowance to any employee or dependent of any employee in cases of "equity and good conscience" on the recommendation of the Board of Directors of the company, approved by the trustees.

The trust was irrevocable, was to terminate 21 years after the death of the last survivor of the employees employed at the time of its creation, or if the name "Eastman" was dropped from the name of the company, or upon the liquidation of the company.

The District Court held that the trust was not exempt from income tax because a part of its net income inured to the benefit of a private individual, Mrs. Eastman, and because the trust was neither organized nor operated exclusively for a charitable purpose within the meaning of section 101 (6). We agree with the result reached by the lower court.

To sustain its claim, taxpayer carried the burden of proving (1) that it was organized exclusively for charitable purposes, (2) that it is operated exclusively for charitable purposes, (3) that no part of its net earnings inured to the benefit of any private shareholder or individual, and (4) that no substantial part of its activities consist of carrying on propaganda or otherwise attempting to influence legislation. Universal Oil Products Co. v. Campbell, 7 Cir., 181 F.2d 451, 457. If any substantial part of its activities is not charitable within the meaning of the section, the exemption must be denied. Better Business Bureau of Washington, D. C. v. United States, 326 U.S. 279, 283, 66 S.Ct. 112, 90 L.Ed. 67.

The reason underlying the exemption granted by section 101(6) to organizations organized and operated for charitable purposes is that the exempted taxpayer performs a public service. The common element of charitable purposes within the meaning of the section is the relief of the public of a burden which otherwise belongs to it. Charitable purposes are those which benefit the community by relieving it pro tanto from an obligation which it owes to the objects of the charity as members of the community. "An institution that operates primarily for the benefit of private parties and only incidentally for the public is not a charitable institution in fact or within the meaning of the statute under consideration." Underwriters' Laboratories v. Commissioner of Internal Revenue, 7 Cir., 135 F.2d 371, 373.

It is stipulated that no part of the taxpayer's activities is devoted to propaganda or to influencing legislation. But a gift of income of a fund to employees of a purely business corporation as "added compensation" for their services to the corporation is not charitable as that word is used in the statute. In theory the community may receive an incidental benefit, but not in

the way of relief from or assistance in an obligation of its own. The recipients of the benefit of "added compensation" are the individual employees and the company. Contrary to the prohibition in the statute, the income of a fund so distributed inures to their benefit as private individuals. Granting that section 101(6) should be given a liberal interpretation to effect the legislative intent, we can not accept appellants' contention that the provision for "added compensation" to employees is merely incidental to the primary purpose of the trust. The careful detail and peremptory language with which the provision is stated in the trust instrument indicate the contrary. The presence of this provision in the trust instrument in such elaboration can be accounted for only on the supposition of its importance in the organization and the operation of the trust fund.

Nothing in the record informs us concerning the number of employees of the company, the number of them presently eligible or within the reasonable future to become eligible to pensions upon retirement, or concerning the proportion of the net income of the trust fund required or likely to be required for these purposes of the trust. The proportion of the trust income to be devoted to pensions for retired employees is largely within the control of the corporation through its majority representation on the board of trustees, as well as by the explicit provisions of the trust instrument. The Board of Directors of the company may fix the amount payable to any beneficiary of the first group. It determines not only the amount payable to an individual of the second and fourth groups of beneficiaries, but also the right of any member of either group to receive any pension. Its discretion is not limited. In view of the provisions of the trust instrument and because of the impossibility of any determination or even forecast of the proportion of the income of the fund required for the purposes of pensions and relief to employees, it is impossible to say with the certainty necessary to the claimed exemption that the taxpayer has been organized or will be operated exclusively for charitable purposes. On the record it is just as reasonable to suppose that its principal benefits will inure to the active employees of the company as compensation for services rendered.

We think the taxpayer in this case has failed to establish that it was organized and operated exclusively for a charitable purpose. Whether in the absence of the "added compensation" provision of the trust instrument taxpayer would be entitled to the exemption claimed, it is not necessary for us to decide.

The judgment is affirmed.