**Paul G. BOMAN, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15644.**

United States Court of Appeals
Eighth Circuit.

Jan. 22, 1957.

768

John W. Hughes, Chicago, Ill. (John E. Hughes and Harold R. Burnstein, Chicago, Ill., were with him on the brief), for petitioner.

Marvin W. Weinstein, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson, Harry Baum, and Melvin L. Lebow, Attys., Dept. of Justice, Washington, D. C., were on the brief), for respondent.

Before GARDNER, Chief Judge, and VAN OOSTERHOUT and WHITTAKER, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Dr. Paul G. Boman, hereinafter called taxpayer, has petitioned this court to review the decision of the Tax Court upholding the Commissioner's determination disallowing taxpayer's charitable contributions deductions for gifts he made to Duluth Clinic Foundation, hereinafter called Foundation, in the years 1946 to 1949, inclusive.

The sole issue involved in this appeal is whether the Foundation qualifies as an organization to which deductible contributions may be made under the provisions of section 23(o) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 23(o). The facts are stipulated and are not in dispute. They are set out quite fully in the Tax Court's decision reported at 26 T.C. 660, and will not be repeated in detail.

During all times here material taxpayer has been a physician, practicing his profession at Duluth, Minnesota, and a member of the Duluth Clinic, a partnership of practicing physicians at

Duluth. In 1919 the Clinic organized Octagon Investment Company, a corporation. Octagon stock was purchased by members of the Clinic and also by outsiders. Octagon, with the aid of a $165,000 bank loan, in 1926, built and leased to the Clinic the building in which the Clinic conducts its business. All Octagon stock, except qualifying shares held by three members of the Clinic as trustees, was retired and replaced by Octagon notes.

On July 18, 1945, the Foundation was incorporated under Minnesota law as a corporation exclusively for charitable, scientific, and educational purposes. On September 15, 1945, the Clinic transferred by gift to the Foundation all its furniture, fixtures, and tangible personal property used in the Clinic. The Foundation then leased all this property to the Clinic on a year to year basis, renewable for ten years, at an annual rental of 16 per cent of the cost or fair market value of the property, whichever might be greater.

On December 1, 1945, Octagon executed an irrevocable lease of the building housing the Clinic to the Clinic for a period of 15 years at a rental of $2,600 per month. The lease contains a provision that rental can be reduced by agreement between the Clinic and the Foundation, but not below an amount sufficient to pay mortgage principal installments, interest, operating expenses, and taxes. In 1946 all of the Octagon stock was transferred to the Foundation. On December 27, 1947, Octagon conveyed title to the building housing the Clinic to the Foundation. The Foundation assumed the balance due on the building mortgage in the amount of $148,500 and liability on Octagon's notes, aggregating $104,500, which had been issued in exchange for Octagon stock.

The Tax Court found that contributions of members of the Clinic to the Foundation during the 1946 to 1949 period amounted to $185,198.98 in cash and property. The charitable deductions claimed by taxpayer did not exceed his proportionate share of the gift to the Foundation.

Taxpayer contends that his share of the Clinic's gifts to the Foundation is deductible as charitable contributions under section 23(o) of the Internal Revenue Code of 1939, as amended, which provides:

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(o) *Charitable and other contributions.* In the case of an individual, contributions or gifts payment of which is made within the taxable year to or for the use of:

\* \* \* \* \* \*

"(2) A corporation, trust, or community chest, fund, or foundation, created or organized in the United States or in any possession thereof or under the law of the United States or of any State or Territory or of any possession of the United States, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation \* \* \*."

Section 101(6) of the Internal Revenue Code, 1939, 26 U.S.C.A. § 101(6), relating to corporations exempt from taxation, contains very similar language.

All parties agree that the tests to be applied in determining whether the contributions here involved are exempt under section 23(o) are those stated by this court in Duffy v. Birmingham, 190 F.2d 738, at page 740, as follows:

"To sustain its claim, taxpayer carried the burden of proving (1) that it was organized exclusively for charitable purposes, (2) that it is operated exclusively for charitable purposes, (3) that no part of its net

earnings inured to the benefit of any private shareholder or individual, and (4) that no substantial part of its activities consist of carrying on propaganda or otherwise attempting to influence legislation. * *"

See Treasury Regulations 111, Section 29.101(6) as amended by T.D. 5928, 1952–2 Cum.Bull. 181; Merten's Law of Federal Income Taxation, Section 34.15.

The Tax Court agreed with the Commissioner's contention that taxpayer had not carried the burden of proving that the Foundation met the tests set out in the Duffy case. In order to determine whether such conclusion is clearly erroneous, we shall separately consider each element of proof stated to be essential in the Duffy case.

■ We are satisfied that the Foundation was organized exclusively for charitable purposes. The Tax Court so found, stating:

"The provisions of the charter of Foundation are quite adequate for a charitable corporation but they, alone, are not determinative of the issue here. * * *"

The certificate of incorporation includes the following:

"2. This corporation is organized and shall be operated exclusively for charitable, scientific and educational purposes, including, among other things, the aid of the sick and disabled, the study of the causes, characteristics, prevention and cure of human ailments and injuries, and problems of general public hygiene and health, and the promotion of medical, surgical and scientific research, knowledge, skill and education.

" * * * All net income from any property, and all the proceeds of any disposition thereof, and all its net earnings and income shall be used exclusively for the promotion of its charitable, scientific and educational purposes. * * *"

The certificate also provides that, upon dissolution or termination of the Foun-dation, all of its assets, after payment of its obligations, shall be delivered to such nonprofit organization for medical education or research as may be designated by resolution of the directors, or, in default of such resolution, to the University of Minnesota for the benefit of its College of Medicine.

The Foundation also met the requirement that it be operated exclusively for charitable purposes. The Commissioner in his argument emphasizes the word "exclusively" in the exemption statute, heretofore quoted, and insists that the Foundation was not operated exclusively for charitable purposes, contending that the Foundation was a mere adjunct of the Clinic and a business enterprise.

The Commissioner and the Tax Court relied upon the Tax Court's decision in C. F. Mueller Co. v. Commissioner, 14 T.C. 922, reversed 3 Cir., 190 F.2d 120, and Lesavoy Foundation v. Commissioner, 25 T.C. 924, reversed 3 Cir., 238 F.2d 589. Reliance is also placed upon Eaton Foundation v. Commissioner, 9 Cir., 219 F.2d 527, and United States v. Community Services, 4 Cir., 189 F.2d 421.

The two cases last cited support the Commissioner's position. Duffy v. Birmingham, supra, cited by the Commissioner, is of no help to him, as in that case we expressly stated that we did not reach the issue we are now considering.

Better Business Bureau of Washington, D. C. v. United States, 326 U.S. 279, 66 S.Ct. 112, 90 L.Ed. 67, is clearly distinguishable from our present case, as there the Court found petitioner's activities were largely animated by commercial purposes and were directed to ends other than education.

Many courts have held that the destination of income, rather than the source of income, is the ultimate test of exemption under the statute we are considering. Trinidad v. Sagrada Orden, 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458; C. F. Mueller Co. v. Commissioner, supra; Roche's Beach, Inc., v. Commissioner, 2 Cir., 96 F.2d 776; Debs Memorial Radio Fund v. Commissioner, 2 Cir., 148 F.2d

948; Commissioner of Internal Revenue v. Orton, 6 Cir., 173 F.2d 483; Willingham v. Home Oil Mill, 5 Cir., 181 F.2d 9; Arthur Jordan Foundation v. Commissioner, 7 Cir., 210 F.2d 885; Sico Co. v. United States, 102 F.Supp. 197, 121 Ct.Cl. 373.

In Trinidad v. Sagrada Orden, the corporation, admittedly organized for charitable purposes, obtained funds for its charitable work from income derived from leasing its lands, dividends on stocks owned, interest on investments, and a small amount from incidental profits on sales of wine, chocolate, and other articles in connection with the operation of its churches and missions. The contention was there made that the corporation was not operated exclusively for charitable purposes as the corporation was operated for business and commercial purposes in that it used its property to produce income and traded in wine, chocolate, and other articles. In rejecting this contention, the Supreme Court states, 263 U.S. at page 581, 44 S.Ct. at page 205:

"Whether the contention is well taken turns primarily on the meaning of the excepting clause, before quoted from the taxing act. Two matters apparent on the face of the clause go far towards settling its meaning. First, it recognizes that a corporation may be organized and operated exclusively for religious, charitable, scientific or educational purposes, and yet have a net income. Next, it says nothing about the source of the income, but makes the destination the ultimate test of exemption.

"Evidently the exemption is made in recognition of the benefit which the public derives from corporate activities of the class named, and is intended to aid them when not conducted for private gain. Such activities cannot be carried on without money; and it is common knowledge that they are largely carried on with income received from properties dedicated to their pursuit. This is particularly true of many charitable, scientific and educational corporations and is measurably true of some religious corporations. Making such properties productive to the end that the income may be thus used does not alter or enlarge the purposes for which the corporation is created and conducted. * * *"

In the Mueller Company case, supra, a charitable corporation, whose profits and assets were available only for the benefit of the Law School of New York University, engaged in an extensive macaroni business enterprise. The Tax Court had denied the exemption upon the basis that the corporation was not organized and operated exclusively for exempt purposes. The decision of the Tax Court was reversed by the Third Circuit. After carefully reviewing many authorities, the court states, 190 F.2d at page 121:

"* * * These cases hold, along with others, that the exclusive purpose required by the statute is met when the only object of the organization involved originally was and continues to be religious, scientific, charitable or educational, without regard to the method of procuring the funds necessary to effectuate the objective."

We agree with the reasoning of the cases just cited, supporting the position that the exclusive purpose required by the exemption statute is met when the destination of the corporate assets and income is recognized charities. It is entirely clear that all assets of the Foundation, including principal and income, are irrevocably pledged to charitable uses.

We are also satisfied that no part of the net earnings of the corporation inures to the benefit of any private stockholder or individual. The Tax Court made no express finding that any part of the net earnings inured to the benefit of any individual. It concedes that during the 1946 to 1949 period contributions to recognized charities totaled $22,375,

and states, "Those contributions did not depend upon earnings of the Foundation, since the latter were inadequate for the purpose." No contention is made that taxpayer received any direct dividend or profit or salary from the Foundation.

The Commissioner cites Northwestern Jobbers' Credit Bureau v. Commissioner, 8 Cir., 37 F.2d 880, and Northwestern Municipal Ass'n v. United States, 8 Cir., 99 F.2d 460, to the effect that "inure" means "to serve to the use or benefit of," and that profits can result to stockholders in other ways than dividends.

■ In each of the cited cases free services were furnished to stockholders. The test of exemption is thus stated in Northwestern Municipal Ass'n. v United States, 99 F.2d at page 463:

"* * * If its main purpose is to benefit its shareholders or individuals it is not exempt. On the other hand, if benefit to the individuals is secondary and incidental, it is exempt. * * *"

Even if the inuring clause of the statute were to be construed as urged by the Commissioner, he can not prevail. There is no evidence to support a conclusion that the Foundation was operated for the benefit of the Clinic. The Clinic members received no free services from the Foundation. Adequate rental was paid for all the property of the Foundation used and leased by the Clinic. The Tax Court in effect so finds, saying:

"* * * However, the Commissioner does not contend that the rent for the equipment or the original rent for the building were inadequate but he calls attention, as some evidence of intent, to the inadequate rent charged for the use of the parking areas late in 1949 and to the fact that no additional rent was charged in later years for the air conditioning, installed at substantial cost."

The rental terms have heretofore been set out. Some contention is made that the rental paid for the parking lots acquired in 1949 is inadequate, that air conditioning was installed in 1951 at a cost of $8,393, that in 1950 and 1951 $44,000 was expended for furniture and fixtures, and that no additional rent was paid for these items. The gifts here involved were made in 1949 and earlier years, and we can not see what relevancy subsequent transactions can have on the validity of the gifts. However, we note that the equipment rental paid by the Clinic increased from $10,276 in 1946 to $26,536 in 1952.

■ The only rent inadequacy claimed for the years here involved is that pertaining to the parking lots for the last four months of 1949. These lots were acquired at a cost of $19,000. The rental paid for the last four months of 1949 was $200. In 1956 the parking lot rental was retroactively adjusted to produce 9 per cent of cost annually, and additional rent for the 1949 period was paid in the amount of $371.56. The total rent for 1949 for building and equipment was over $51,000. The parking lot deficiency, if any, particularly in the light of its subsequent adjustment, was proportionately so small as not to be entitled to any significance. We are satisfied the Clinic paid the Foundation a fair rental for all facilities furnished and rented to it during the 1946 to 1949 period, and that there is no legal basis for saying that the Foundation was operated for the benefit of the Clinic.

The parties have stipulated that no substantial part of the Foundation's activities consists of propaganda or otherwise attempting to influence legislation.

The taxpayer has conclusively established each of the elements necessary to entitle him to a charitable deduction under section 23(o) of the Internal Revenue Code. The Tax Court's decision denying him this exemption was induced by an erroneous view of the applicable law in the respects hereinabove pointed out.

The taxpayer also contends that he is entitled to exemption for the years here involved by virtue of the retroactive provisions of section 302 of the Revenue Act of 1950, 26 U.S.C.A.Int.Rev.Acts, page

145, providing that no organization shall be denied exemption under section 101 (6) on the ground that it is carrying on a trade or business for profit, "if such trade or business is the rental by such organization of its real property (including personal property leased with the real property)." There appears to be considerable merit to this contention. However, since the conclusion we have reached upon the main issue fully disposes of this appeal, we find it unnecessary to pass upon this issue.

The decision of the Tax Court is reversed.