[Civ. No. 12598. Third Dist. May 7, 1971.]

Estate of ETHEL C. ALLEN, Deceased.
HOUSTON I. FLOURNOY, as State Controller,
Petitioner and Respondent, v.
CHARLES A. ZELLER, as Executor, etc., et al., Objectors and Appellants.

404

**COUNSEL**

Charles A. Zeller, in pro. per., Clausen & Clausen and Henry C. Clausen for Objectors and Appellants.

Myron Siedorf, Robert G. Harvey and G. Louis Ambrose for Petitioner and Respondent.

**OPINION**

**FRIEDMAN, J.**—The will of Ethel C. Allen contained two separate bequests to Scottish Rite Bodies, Stockton, California. One bequest, consisting of a third of the estate's residue, was accompanied by a request that the money be used to pay off the debt against the Temple building; the other, also one-third of the residue, was accompanied by a request that it be used for improving and maintaining the restaurant and food facilities in the Temple building, any remaining sum to be used for the improvement of Masonic degree work. The inheritance tax appraiser filed a report assessing an inheritance tax against these bequests. The executor filed an objection and now appeals from a probate court order overruling the objection and sustaining the tax.

Pivot of the appeal is the claim that Scottish Rite Bodies, Stockton,

California, is entitled to the exemption conferred upon charitable legatees by a provision of the inheritance tax law, section 13842, Revenue and Taxation Code.[1] The statute limits the exemption to transferees organized and operated "exclusively" or "solely" for religious, charitable, scientific, literary or educational purposes. The probate court made findings of fact, declaring that although the legatee performed many charitable functions, the bequests were not "exclusively" for the purposes described in the statute.

■ Opposing the exemption, the State Controller has filed a brief declaring that the evidence "was not without conflict," thus that this court is bound by the probate court's findings. Contrary to the rules on appeal, the Controller does not support this statement by appropriate references to the record.[2] ■ Actually, the facts are undisputed. Hence appellate inquiry into the availability of the charitable exemption is a matter of law, unrestricted by the probate court's findings. (*Estate of Fleming,* 31 Cal.2d 514, 522-523 [190 P.2d 611].)

At the hearing in the probate court a number of documents were introduced in evidence and testimony was taken from a single witness who had long experience in Masonry and had held various offices both in the Grand Lodge of California and in the Supreme Council of the Scottish Rite of Freemasonry. We summarize the testimony:

The Supreme Council is the governing body for all Scottish Rite organizations within 35 states. Subordinate to it is the statewide California organization, called an "Orient," which supervises the activities of 17 California "Valleys," including the legatee, Scottish Rite Bodies, Stockton, California. The legatee is an unincorporated association. Embraced within it are four separate organizations: the Lodge of Perfection, the Chapter of Rose Croix, the Council of Kadosh and the Consistory. The legatee has a

---

[1] In pertinent part, Revenue and Taxation Code section 13842, provides as follows: "Property transferred to any society, corporation, institution, or association, . . . organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, . . . is exempt from the tax imposed by this part, if any of the following conditions is present:

"(a) The society, corporation, institution, foundation, trust, or association is organized solely for religious, charitable, scientific, literary, or educational purposes under the laws of this state or of the United States; provided that if the transfer is to, or in establishment of, a trust organized for such purposes, the trustee need not be organized solely for such purposes."

[2] See California Rules of Court, rule 15(a). Particularly in point is the observation of the court in *Wantz* v. *Union Bank & Trust Co.,* 137 Cal.App. 98, 102 [29 P.2d 882, 31 P.2d 826]: "In our opinion it is the duty of a respondent whose judgment is being questioned on appeal on this ground to point out to the appellate court the evidence he deems sufficient to support such judgment. . . ."

membership of 2,800 persons, all of whom gained eligibility by qualifying for the first three degrees of Masonry. The organizations within the Stockton Bodies confer degrees from the 4th through the 32d. Qualification for the degrees is an educational process, teaching the Mason the duty of obedience to law, the virtues of industry and honesty, the principles of justice, the importance of religion, patriotism and ethical behavior. Conferral of these degrees is accompanied by a ritual. To be eligible for a degree, the applicant must believe in God. Each member is encouraged to possess religious beliefs and to lead a religiously directed life. At any meeting of the Scottish Rite held in Stockton a Bible must be on the altar.

The governing rules of the order require that the legatee, Stockton Scottish Rite Bodies, be nonprofit, charitable and educational. Its Temple building is used for meetings, for the performance of ceremonials and lectures, training and education of members in the knowledge requisite for advancement through the degrees and for social gatherings. The building contains offices, a banquet room, kitchen, lobby, club rooms, library and a lodge room. The "restaurant" mentioned in the will is not a restaurant in the usual sense, but rather consists of dining and kitchen facilities used for social events attended by members and their wives.

The Stockton Scottish Rite Bodies receives funds from dues, from charitable appeals and from charitable collections at meetings. It distributes money for charitable and educational purposes through several media. One medium is the Supreme Council in Washington, D.C., which receives a portion of the Stockton Bodies' revenue. The Supreme Council provides funds for educational programs and publications promoting patriotism and allegiance to American political concepts. It distributes money to a variety of welfare and educational agencies such as boys' clubs, colleges, libraries, hospitals and medical research agencies. Another medium for the dispensation of charity is a local Masonic official called the Almoner. The Almoner's function is the selection and support of charities, including direct disbursement to needy people. When the receipts of charitable appeals among the members do not meet the charitable needs of the Almoner, the legatee provides supplemental money from its treasury.

A third medium for charitable dispensation is the Scottish Rite Foundation, a statewide organization of the various California Valleys, including the legatee. The Foundation allocates an annual sum among three charitable programs, one medical and two educational. The cost of the Foundation activity is prorated among the California Valleys in proportion to membership.

The witness testified—without contradiction but in conclusionary terms

—that the functions of the Masonic order are "solely and only and exclusively educational, charitable and religious," stating in effect that fulfillment of the fellowship and social needs of its members was no more significant than that which a church provides its members.

■ In support of the exemption, the executor cites numerous cases, mostly from other states, recognizing individual Masonic lodges as charitable. There are contrary cases. Decades of decisions involving Masonic organizations have conferred or withheld charitable status for various purposes of the law, among them exemption from ad valorem property taxation and from succession taxes. (See *Estate of Wirt,* 207 Cal. 106 [277 P. 118]; *Estate of Wirt,* 124 Cal.App. 7 [12 P.2d 95]; *Kauffman* v. *Foster,* 3 Cal.App. 741 [86 P. 1108]; Notes, 22 A.L.R. 907, 83 A.L.R. 773, 174 A.L.R. 531, 69 A.L.R.2d 864; 84 C.J.S., Taxation, § 295; 85 C.J.S., Taxation, § 1161.) These cases supply analytical guidance but have meager precedential value.[3] Speaking generally of bequests to local Masonic lodges, the California Supreme Court has pointed out: ". . . the question as to whether or not certain lodges which are independent as to the detail of their local organization, but which in a general way belong to one branch of a widespread order of Masonry, are or are not charitable as to the main objects and purposes of their organization and conduct . . . is a question as to which this court cannot, as matter of law, assume to take judicial notice, but which are essentially matters of fact to be made the subject of judicial inquiry and of the proffer of appropriate proofs before the trial court." (*Estate of Wirt, supra,* 207 Cal. at p. 111.)

■ Other factors urged upon us by the parties but of limited significance are judicial generalizations opting for strict or liberal construction of tax exemption statutes. A statute should be construed to achieve its objective, no more, no less. There are, to be sure, California cases declaring that exemptions from inheritance taxation should be liberally construed in favor of charitable organizations (e.g., *Estate of Barter,* 30 Cal.2d 549, 554-555 [184 P.2d 305]; *Estate of Cutler,* 122 Cal.App.2d 147, 151 [264 P.2d 186].) Most declarations of this sort presuppose the organization's classification as a charity. Classification is the first order of business. At this point the question of exemption rests upon "the text

---

[3]*Estate of Wirt, supra,* 124 Cal.App. 7, is an example of the kind of "precedent" that ought not be indiscriminately applied. Gist of the decision was that a bequest to Masonic lodges did not violate the restriction against perpetuities because the lodges were "mainly" charitable. The court pointed out (124 Cal.App. at p. 12) that it was not dealing with a statutory demand for "purely" charitable purposes. Here, of course, the statutory exemption demands that the organization be devoted exclusively or solely to the designated purposes.

and scope of the statute itself," not upon exhortations to strictness or liberality. (*Estate of Fleming,* 31 Cal.2d 514, 520 [190 P.2d 611].)

For most purposes of the law, benefit to the public is the prime requisite for status as a charitable gift or charitable institution. "A bequest is charitable if: (1) It is made for a charitable purpose; its aims and accomplishments are of religious, educational, political or general social interest to mankind. [Citations.] (2) The ultimate recipients constitute either the community as a whole or an unascertainable and indefinite portion thereof. [Citations.] The charitable nature of an institution is determined on the same basis." (*Estate of Henderson,* 17 Cal.2d 853, 857 [112 P.2d 605]; see also, *Lynch* v. *Spilman,* 67 Cal.2d 251, 261 [62 Cal.Rptr. 12, 431 P.2d 636].)

An equivalent feature of charitable status is an objective or set of objectives "lessening the burdens of government." (*Stockton Civic Theatre* v. *Board of Supervisors,* 66 Cal.2d 13, 19 [56 Cal.Rptr. 658, 423 P.2d 810], quoting *Estate of Halm,* 196 Cal. 778, 782 [239 P. 307].) Relief of poverty is not a condition of charitable assistance; if the benefit conferred has a sufficiently widespread social value, a charitable purpose exists. (*Estate of Robbins,* 57 Cal.2d 718, 723 [21 Cal.Rptr. 797, 371 P.2d 373].) The charitable exemption established by Revenue and Taxation Code section 13842, demands these very characteristics. In *Estate of Fleming, supra,* 31 Cal.2d at page 520, the court points out that the inheritance tax is a revenue measure; that, in exempting bequests to charitable organizations, the Legislature intended the benefits of the property to redound to the people of the state as a compensating factor.

Many organizations, of course, fulfill a mixture of purposes, charitable, fraternal and social. In lifting the burden of inheritance taxation from exclusively charitable organizations, the Legislature did not intend to exempt gifts to be used partly for charitable and partly for noncharitable purposes. (*Estate of Fleming, supra,* 31 Cal.2d at p. 522, quoting with approval from *Tax Commission* v. *Security Sav. Bank & Trust Co.,* 117 Ohio 443 [159 N.E. 570, 572].)

Where as here the law demands purposes which are exclusively or solely charitable, the presence of incidental social and pleasurable activities does not disqualify the group. When, in contrast, a formal declaration of organizational purpose (e.g., in corporate articles) or scrutiny of the actual activities reveals that social or other noncharitable purposes are independent objectives, then the group lacks "exclusive" or "sole" charitable purpose. (*Lynch* v. *Spilman, supra,* 67 Cal.2d at pp. 263-264; see also, *Better Business Bureau* v. *United States,* 326 U.S. 279 [90 L.Ed. 67, 66

S.Ct. 112].) A standard text declares: "Many lodges and fraternal orders have both social and ritualistic objects and also such charitable purposes as providing assistance to sick or aged members. A gift to or for such an organization for all its purposes will ordinarily fail to achieve standing as a charitable donation or trust because the charitable and noncharitable purposes are mixed and the trust is indivisible." (Bogert, Trusts and Trustees (2d ed.) § 379, p. 187.)

The record before us is not a satisfactory one. The oral testimony and much of the documentary evidence are generalized, argumentative and conclusionary. There is no evidence delineating the Stockton organization's relative income from initiation and other fees, from membership dues and from charitable appeals, nor the distribution of expenditures among various objectives, namely, local administrative expenses, capital outlays, social and recreational activities, remittances to the Supreme Council and the Orient of California and contributions to the charitable activities of the Almoner and of the Scottish Rite Foundation. Although the Supreme Council's contributions to educational, patriotic, health and welfare organizations are enumerated, there is no evidence of the Council's outlays for other purposes or of the pro rata distribution of the Stockton organization's remittances between these contributions and the other expenses of the Supreme Council. There is no description of the frequency and nature of the Stockton organization's social and recreational activities. Limited by the record before us, we nevertheless discern evidence, although generalized in character, justifying the conclusion that the legatee is not exclusively or solely engaged in charitable, religious and educational activities.

Although charity and education—possibly religion as well—constitute a large, perhaps even a predominant, part of its program, the Stockton organization possesses independent objectives of primary interest and benefit to its members which do not "redound to the people within the state." (*Estate of Fleming, supra,* at p. 520.) As a component of the Scottish Rite of Freemasonry, it pursues substantial objectives which are fraternal, ritualistic and social and which serve primarily the needs and aims of its members. One of the exhibits, a text describing the antecedents, philosophy and aims of Masonry, defines the organization as "the activity of closely united men who, employing symbolical forms . . . work for the welfare of mankind, striving morally to ennoble themselves and others, and thereby to bring about a universal league of mankind, which they aspire to exhibit even now on a small scale." (Newton, The Builders (1914) p. 241.) A kindred publication (also in evidence) refers to Masonry as an "organized brotherhood" and as an "international fraternity"; it declares that ". . . Masons help one another, showing a

brotherliness truly practical in sickness and in difficulty." (Newton, The Men's House (1923) pp. 105-106, 111.)

While the order's ultimate objectives are described as the peace and moral elevation of all mankind, it proposes to reach this ultimate objective through a more immediate one, the ennoblement of its members. An individual lodge provides a miniature prophecy of the desired world community. (*Ibid.,* p. 90.) Pending realization of this world vision, its moral and philosophic teachings are designed to elevate and unify the members of the order. It has, in other words, a hope but no concrete program to embrace mankind within its world fraternity. Pending realization of this hope, it "breaks the appalling loneliness in which men live, organizing them in spiritual faith, moral purpose, and eternal hope, holding them together by the cement of brotherly love and a common high endeavor." (*Ibid.,* p. 90.)

The order's philosophical doctrine includes strong religious elements derived from Judaic and Christian sources, urging faith in God and emphasizing the Bible. Abstaining from sectarian theology and denominationalism, the doctrine insists upon individual freedom of religion. The doctrine is accompanied by a highly developed symbolism. While the order's basic principles and some of its rites are freely published, much of its symbolism and some of its philosophic statements are secret, being available only to those who have undergone rites of initiation. There are secret signs and grips by which members recognize one another. The statutes of the Supreme Council permit a single blackball to cause rejection of an applicant for initiation or affiliation, thus endowing each member with the power of arbitrary exclusion.

In short, the order possesses a set of ultimate aims embracing all mankind and a more immediate set of aims embracing its own membership. To its own members the Stockton Scottish Rite Bodies holds out the prospect of pleasurable fellowship, expectations of mutual aid and the emotional fortification emanating from a shared philosophy, a shared ritual and shared exclusive knowledge. The power of arbitrary exclusion held by each member permits undisclosed motivations to restrict the diffusion of benefit to those possessing individually selected, arbitrarily chosen traits. Such a power is more characteristic of a social organization than of one which extends its program to the entire community.

We conclude that the legatee is only in part engaged in the charitable activities enumerated in section 13842 of the Revenue and Taxation Code; that, however substantial its charitable purposes, its noncharitable activities

form an independent and substantial part of its program and sphere of activity.

Judgment affirmed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied May 27, 1971, and appellants' petition for a hearing by the Supreme Court was denied June 30, 1971.